**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Michael S. Stein
Seth A. Goldberg
Katherine R. Beilin
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200
Email: mstein@pashmanstein.com
    sgoldberg@pashmanstein.com
    kbeilin@pashmanstein.com

-and-

Henry J. Jaffe (*pro hac vice* forthcoming)
**PASHMAN STEIN WALDER HAYDEN, P.C.**
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: hjaffe@pashmanstein.com

*Counsel to Defendants Michael Jacobs, Joshua
Jacobs, Hyman Jacobs, David Jacobs, Andrew
Masetti, Christopher Metternich, Millstone
Riverview Real Estate Urban Renewal LLC, and
Venetian Healthcare LLC*

| | |
|---|---|
| In re<br><br>VENETIAN CARE & REHABILITATION CENTER, LLC, et. al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-14510 (VFP)<br><br>Jointly Administered |

## NOTICE OF REMOVAL

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Venetian Care & Rehabilitation Center, LLC (3447); Windsor Healthcare Management, LLC (8442); Buckingham at Norwood Care & Rehabilitation Center, LLC (8881); Ashbrook Care & Rehabilitation Center LLC (8833); Cornell Hall Care & Rehabilitation Center LLC (9141); Greenbrook Manor Care & Rehabilitation Center LLC (9365); Llanfair House Care & Rehabilitation Center LLC (9620); Merwick Care & Rehabilitation Center, LLC (9389); Canterbury at Cedar Grove Care & Rehabilitation Center LLC (8863).

1

Michael Jacobs, Joshua Jacobs, Hyman Jacobs, David Jacobs, Andrew Masetti, Christopher Metternich, Millstone Riverview Real Estate Urban Renewal LLC, and Venetian Healthcare LLC (the "Defendants") file this Notice of Removal from the Superior Court of New Jersey Law Division, Middlesex County to the United States Bankruptcy Court for the District ("Bankruptcy Court") pursuant to 28 U.S.C. § 1452(a), Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Local Rule 9027-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey ("Local Rules"). Under Local Rule 9027-1(a), this pleading is filed with the Clerk of Court for the Bankruptcy Court.

## BACKGROUND

1.     On April 23, 2026 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). *See* **Exhibit A** (*Voluntary Petition for Non-Individuals Filing for Bankruptcy*, *In re Venetian Care & Rehabilitation Center, LLC*, No. 26-14510-VFP (Bankr. D.N.J. Apr. 23, 2026) [D.I. 1]).

2.     The Debtors formerly owned Skilled Nursing Facilities ("SNFs") providing medical care to patients following surgical and other procedures. In December 2024, the Debtors sold two of those SNFs, Merwick Care & Rehabilitation Center, located at 100 Plainsboro Road, Plainsboro, New Jersey 08536 and Venetian Care & Rehabilitation Center, located at 275 John T. O'Leary Blvd., South Amboy, New Jersey 08879, to Plaintiffs. *See* **Exhibit B** ¶¶ 3, 48-49.

3.     Each of those transactions was completed by way of two separate agreements, an Asset Purchase Agreement ("APA") and Operations Transfer Agreement ("OTA").  The APAs conveyed land, buildings, improvements and certain personal property to the Plaintiffs, whereas the OTAs conveyed rights to the Plaintiffs to act as new operators of the SNFs, including pending

2

regulatory and licensure of Plaintiffs as new operators of the SNFs. *Id*. at ¶¶ 49-51. Given

anticipated delays between the closing of the OTAs and such approvals, as well as the transfer by

Medicare and Medicaid of provider numbers from the selling entities to the purchasing entities,

under the OTAs the Plaintiffs' personnel provide caregiving services at the SNFs, and payment is

remitted to the Debtors' existing bank accounts using their provider numbers, which payments are

held in trust by the Debtors and transferred to Plaintiffs. *Id*. at ¶¶ 5-6.

4.      As set forth in the *Interim Order (I) Authorizing the Debtors to (A) Continue to*

*Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related*

*Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany*

*Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Claims;*

*and (III) Granting Related Relief* [D.I. 24] (the "Interim Cash Management Order"), the Debtors'

existing agreements with other parties, including the Plaintiffs, remain in place:

> The Debtors receive and hold in trust for the benefit of the New
> Operators all amounts received on account of post-closing services
> performed at the skilled nursing facilities pursuant to the OTAs
> ("Post-Closing Receipts"). To the extent a Debtor received or
> receives any  Post-Closing Receipts on or after the Petition Date, the
> Debtor shall (a) transfer from the Debtor accounts and maintain such
> funds in a segregated account pending remittance to the applicable
> New Operator; and (b) remit (i) 70% of the Post-Closing Receipts
> to the applicable New Operator no later than two (2) business days
> after such receipt and (ii) any remaining amounts owed to the New
> Operators on account of the Post-Closing Receipts within two (2)
> business days of confirmation that such funds are property of the
> New Operator. The Debtors shall perform a reconciliation of the
> Post-Closing Receipts not less than weekly and promptly remit the
> amounts required to be paid to the relevant New Operators in
> accordance with the prior sentence.

[Interim Cash Management Order at ¶ 19.]

5.      Consequently, the Debtors now "essentially exist as a pass-through entity for the

collection and distribution of payments to and from the New Operators, on the one hand, and

vendors/payors (such as insurers, residents, Medicare, and Medicaid), on the other hand." (the "Cash Management System"). *See Debtors' Amended Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Claims; and (III) Granting Related Relief* [D.I. 14] (the "Cash Management Motion"). Pursuant to the Cash Management Motion, Andrew Masetti, one of the named Defendants and a former Chief Financial Officer of Windsor Healthcare Management, LLC, maintains oversight over the Cash Management System.

6.      Notwithstanding the above, on May 13, 2026, Merwick Healthcare and Rehab Center LLC, Venetian Healthcare and Rehab Center LLC, Merwick Propco Urban Renewal LLC, and Venetian Propco LLC (the "Plaintiffs") filed their Complaint against Defendants in the Superior Court of New Jersey, Middlesex County in the action styled *Merwick Healthcare and Rehab Center LLC, et al., v. Jacobs, et. al.*, MID-L-003196-26 (the "State Court Action"). A true and accurate copy of the Complaint is attached hereto as **Exhibit B** and incorporated by reference.

7.      Counts 1-7 of the Complaint assert various claims sounding in tort against all Defendants; Counts 8-24 of the Complaint assert claims for alleged breaches of the OTAs against the corporate Defendants; and Counts 25 and 26 assert claims against an owner of the Debtors, Hyman Jacobs, for alleged breach of personal guarantees of the obligations purportedly owed by the Debtors under the OTAs.  The individual Defendants in the State Court Action are directors, officers, and/or owners of the Debtors, and the corporate defendants owned the property that was conveyed under the APAs. *See, e.g.,* **Exhibit B** ¶¶ 17-22.

8.      The Complaint seeks, among other relief, judgment directing the Defendants to turn over trust property to the Plaintiffs, which demand necessarily impacts estate funds governed by

4

the Interim Cash Management Order. Even if the Plaintiffs can claim a trust fund interest in post-closing receipts, to the extent that the Plaintiffs are seeking an order that all such funds should be turned over to them, such relief is plainly inconsistent with the requirements of the Interim Cash Management Order, and as such, Plaintiffs are seeking relief that is at odds with a binding order of this Court.

9.      None of the Defendants in the State Court Action is a party to the OTAs that are the subject of all the claims and alleged contractual obligations that appear at issue in the Complaint and, as such, those claims are derivative of claims against the Debtors named in those operating agreements.  Thus, the Complaint is an obvious attempt to circumvent the automatic stay under the Bankruptcy Code.

### **BANKRUPTCY COURT'S JURISDICTION AND BASIS FOR REMOVAL**

10.      Section 1452 allows a party to "remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334 grants this court original jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

11.      A cause of action is "related to" a bankruptcy case if it becomes property of the estate under section 541(a) of the Bankruptcy Code or "conceivably may have an effect on the bankruptcy estate." *In re Combustion Eng'g*, 391 F.3d 190, 226 (3d Cir. 2018) (citation omitted). "A cause of action is considered property of the estate if the claim existed at the commencement of the filing and the debtor could have asserted the claim on [its] own behalf under state law." *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5

(3d Cir. 2002) (citation omitted). Further, the court's "related to" jurisdiction encompasses an action "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Combustion Eng'g*, 391 F.3d at 226 (citation omitted). The Supreme Court has held that "related to" jurisdiction under 28 U.S.C. § 1334(b) should be interpreted broadly. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08 (1995).

12. A number of the claims at issue in the State Court Action implicate this Court's "arising in" and "arising under" jurisdiction pursuant to 28 U.S.C. § 1334(b). This Court will need to determine whether funds at issue in the State Court Action belong to the Debtors or their estates under section 541 of the Bankruptcy Code and whether the claims in the State Court Action implicate or are in violation of the automatic stay under section 362 of the Bankruptcy Code.

13. Likewise, other claims at issue in the State Court Action are indisputably related to property, rights, and potential defenses of the Debtors' bankruptcy estates. All of the events giving rise to those claims occurred in relation to the sale transaction and underlying agreements between the Debtors and the Plaintiffs. Thus, the State Court Action seeks relief against the Defendants that is inextricably intertwined with funds that are the property of the Debtors' estates and under the jurisdiction of this Court. The Plaintiffs filed the Complaint after the Petition Date on May 13, 2026. Accordingly, the Bankruptcy Court has "related to jurisdiction" over each of the claims in the Complaint under 28 U.S.C. § 1334(b).

14. The Bankruptcy Court also has "related to" jurisdiction over each of the causes of action asserted in the State Court Action because of their conceivable effect on the administration of the Debtors' estates and the adjustment of the debtor-creditor relationship. As discussed above, the State Court Action not only demands monetary damages, but also asserts claims that would redirect future estate funds to the Plaintiffs, would require an accounting using the Debtors' books

6

and records, and would require the attention and focus of the Debtors' personnel and resources, all of which will inevitably impact the estates' administration, the debtors' rights, and could trigger indemnification and estate-level liability claims.  Consequently, these State Court Action claims fall squarely within the Bankruptcy Court's "related to" jurisdiction.

15.     Moreover, the Lawsuit is the Plaintiffs' clear attempt to circumvent the automatic stay. The Operations Transfer Agreements which underlie the Complaint's claims are agreements between (a) debtor Merwick Care & Rehabilitation Center, LLC, and plaintiff Merwick Healthcare and Rehab Center LLC, and (b) debtor Venetian Care & Rehabilitation Center, LLC and plaintiff Venetian Healthcare and Rehab Center LLC. *See* **Exhibit B** at Exhibits 1 & 2.

16.     A plaintiff cannot avoid naming a debtor in a lawsuit where the debtor is a necessary party in order to circumvent the application of the automatic stay. *See*, e.g., *In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 2020) (the bankruptcy court's finding that a lawsuit against the debtor's officers based on the plaintiff's loan agreement with the debtor was merely a "transparent attempt… to end run the automatic stay" supported its determination that the debtor was likely to succeed in having the suit enjoined and the automatic stay enforced); *In re Jefferson County, Ala.*, 491 B.R. 277, 280, 286-87 (Bankr. N.D. Ala. 2013) (staying a lawsuit in which the debtor was not one of the named defendants because the suit was "an attempt to avoid the shield afforded debtors by the automatic stay… based on [the debtor] not having been sued by the plaintiff…", finding it was "obvious" the debtor was a party in interest and that omission of the debtor as a defendant was not controlling as to whether the automatic stay applied); *In re Kaiser Aluminum Corp., Inc.*, 315 B.R. 655, 658 (D. Del. 2004) (applying the automatic stay and rejecting the plaintiff's argument that it had only named the debtor's insurer as a defendant, reasoning that "[t]he scope of [the automatic stay] protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation.").

7

17.    For these reasons, removal is permitted under 28 U.S.C. § 1452(a).

18.    Removal is timely pursuant to Bankruptcy Rule 9027(a)(3).

19.    Venue is proper in the District of New Jersey under 28 U.S.C. § 1452(a) because the New Jersey state court where the Lawsuit is pending is located in this district. Venue is also proper in the Bankruptcy Court.

**COMPLIANCE WITH RULE 9027 AND LOCAL RULE 9027**

20.    Bankruptcy Rule 9027(a)(1) requires that this Notice of Removal contain a statement that, upon removal of the cause of action, the party filing the notice does or does not consent to the entry of final orders or judgment by the bankruptcy court. The Defendants consent to the entry of final orders or judgments by the Bankruptcy Court.

21.    Local Rule 9027-1(c) requires the removing party to, within 14 days after the filing the Notice of Removal, "file with the clerk of the bankruptcy court a copy of the docket sheet and all pleadings from the original court." **Exhibit B** contains copies of those papers.

22.    Contemporaneously herewith, a Notice of Removal will be filed with the Clerk of Court for the Superior Court of New Jersey Law Division, Union County and on the chapter 11 docket in the Bankruptcy Court.

Dated: May 29, 2026                    Respectfully submitted,

By: */s/ Seth A. Goldberg*
Michael S. Stein
Seth A. Goldberg
Katherine R. Beilin
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200
Email: mstein@pashmanstein.com
        sgoldberg@pashmanstein.com
        kbeilin@pashmanstein.com

-and-

8

Henry J. Jaffe (*pro hac vice* forthcoming)
**PASHMAN STEIN WALDER HAYDEN, P.C.**
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: hjaffe@pashmanstein.com

*Counsel to Defendants Michael Jacobs, Joshua Jacobs, Hyman Jacobs, David Jacobs, Andrew Masetti, Christopher Metternich, Millstone Riverview Real Estate Urban Renewal LLC, and Venetian Healthcare LLC*