**JONATHAN M. PROMAN, ESQ.**
30 Wall Street, Eighth Floor
New York, New York 10005
(917) 524-7566 | jproman@promanlaw.com
*Attorneys for Plaintiffs*
*Merwick Healthcare and Rehab Center LLC,*
*Venetian Healthcare and Rehab Center LLC,*
*Merwick Propco Urban Renewal LLC,*
*and Venetian Propco LLC*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------- X

In re:

THE VENETIAN CARE & REHABILITATION
CENTER, LLC, *et al.*[1]

                Debtors.

-------------------------------------------------------------------- X

MERWICK HEALTHCARE AND REHAB
CENTER LLC, VENETIAN HEALTHCARE
AND REHAB CENTER LLC, MERWICK
PROPCO URBAN RENEWAL LLC, and
VENETIAN PROPCO LLC,

                Plaintiffs,

      -against-

MICHAEL JACOBS, JOSHUA JACOBS,
HYMAN JACOBS, DAVID JACOBS,
ANDREW MASETTI, CHRISTOPHER
METTERNICH, MILLSTONE RIVERVIEW
REAL ESTATE URBAN RENEWAL LLC,
VENETIAN HEALTHCARE, LLC, and
DOE DEFENDANTS 1-10,

                Defendants.

-------------------------------------------------------------------- X

Case No. 26-14510 (VFP)
(Jointly Administered)

Chapter 11

Adv. No. 26-01239 (VFP)

**PLAINTIFFS'
MEMORANDUM IN
SUPPORT OF MOTION FOR
REMAND TO THE
SUPERIOR COURT OF THE
STATE OF NEW JERSEY,
MIDDLESEX COUNTY OR,
ALTERNATIVELY,
ABSTENTION**

---

[1] The Debtors in these jointly administered proceedings are (i) Merwick Care & Rehabilitation Center, LLC (Case No. 26-14509-VFP); (ii) The Venetian Care & Rehabilitation Center, LLC (Case No. 26-14510-VFP); (iii) Windsor Healthcare Management Limited Liability Company (Case No. 26-14511-VFP); (iv) Ashbrook Care & Rehabilitation Center, LLC (Case No. 26-14512-VFP); (v) Llanfair House Care & Rehabilitation Center, LLC (Case No. 26-14513-VFP); (vi) Greenbrook Manor Care & Rehabilitation Center, LLC (Case No. 26-14514-VFP); (vii) Cornell Hall Care & Rehabilitation Center, LLC (Case No. 26-14515-VFP); (viii) The Canterbury at Cedar Grove Care & Rehabilitation Center, LLC (Case No. 26-14516-VFP); and (ix) The Buckingham at Norwood Care & Rehabilitation Center, LLC (Case No. 26-14517-VFP).

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT........................................................................................1

PERTINENT FACTS...................................................................................................2

    I.    OVERVIEW OF THE PARTIES' TRANSACTIONS AND DISPUTES.................................2

    II.    THE POST-CLOSING RECEIVABLES HELD IN TRUST FOR THE NEW OPERATOR PLAINTIFFS. 4

    III.    PLAINTIFFS DEMAND THE NEW OPERATOR PLAINTIFF-OWNED IN-TRUST RECEIVABLES PAYMENTS, AND THE DEMAND IS REFUSED WITHOUT ANY PURPORTED JUSTIFICATION..... 6

    IV.    THE PLAINTIFFS COMMENCE THE STATE COURT ACTION........................................ 6

    V.    THE NOTICE OF REMOVAL..............................................................................7

        A.    THE NOTICE OF REMOVAL'S INACCURATE STATEMENTS.................................. 7

        B.    ADMISSIONS IN THE NOTICE OF REMOVAL....................................................11

ARGUMENT............................................................................................................ 11

    I.    TRUST PROPERTY IS NOT PROPERTY OF THE OLD OPERATORS' BANKRUPTCY ESTATES.... 11

    II.    THE VERIFIED COMPLAINT DOES NOT INVOKE THE BANKRUPTCY COURT'S JURISDICTION........................................................................................... 13

        A.    GROUNDS FOR BANKRUPTCY COURT JURISDICTION.....................................13

        B.    PLAINTIFFS' CLAIMS DO NOT ARISE UNDER THE BANKRUPTCY CODE OR ARISE IN A CASE UNDER THE BANKRUPTCY CODE....................................................... 13

        C.    PLAINTIFFS' CLAIMS ARE NOT RELATED TO A CASE UNDER THE BANKRUPTCY CODE.................................................................................................14

    III.    MANDATORY ABSTENTION APPLIES.................................................................. 17

    IV.    ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS POWER OF PERMISSIVE ABSTENTION..............................................................................................18

    V.    EQUITABLE REMAND IS APPROPRIATE..............................................................20

    VI.    THE NOTICE OF REMOVAL IS DEFECTIVE BECAUSE IT FAILED TO INCLUDE PROCESS AND ORDERS ISSUED BY THE STATE COURT.............................................................. 21

VII. DEFENDANTS' AUTOMATIC STAY ASSERTIONS ARE BASELESS..........................................22

CONCLUSION...............................................................................................................................23

## **TABLE OF AUTHORITIES**

CASES

*Bondi v. Citigroup, Inc.*, 2004 WL 7200307 (D.N.J. Nov. 17, 2004)............................................ 18

*Comtrade Ltd. v. U.S.*, 2005 WL 5643875 (S.D. Fla. Nov. 7, 2005)............................................ 21

*Employers-Shopmens Local 516 Pension Trust v. Travelers Cas. & Sur. Co. of Am.*,
    2005 WL 1653629 (D. Or. July 6, 2005)........................................................................... 22

*Ezell v. PHH Mtg. Corp.*, 2023 WL 5049471 (D.N.J. Aug. 8, 2023)............................................ 19

*Geruschat v. Ernst Young LLP (In re Seven Fields Development Corp.)*,
    505 F.3d 237 (3d Cir. 2007)............................................................................................20

*Halligan v. O'Connor (In re Park Ave. Bar & Grill, LLC)*,
    2015 Bankr. LEXIS 4344 (Bankr. D.N.J. Dec. 22, 2015).................................... 10, 13-14

*In re Columbia Gas Sys.*, 997 F.2d 1039 (3d Cir. 1993)..............................................................11-12

*In re DeLauro*, 207 B.R. 412 (Bankr. D.N.J. 1997).......................................................................12

*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*,
    194 B.R. 750 (Bankr. D.N.J. 1996)...............................................................................18, 21

*In re Farina*, 2025 WL 3273247 (Bankr. D.N.J. Nov. 24, 2025).....................................................19

*In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171 (3d Cir. 1996)................................................. 12, 15

*In re Jefferson County, Alabama*, 491 B.R. 277 (Bankr. N.D. Ala. 2013)....................................23

*In re Manley Toys Ltd.*, 2018 Bankr. LEXIS 504 (Bankr. D.N.J. Feb. 23, 2018).........................16

*In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009)................................................................. 15

*Kaiser Group Int't, v. Kaiser Aluminum & Chemical Corp. (In re Kaiser Aluminum Corp., Inc.)*,
    315 B.R. 655 (D. Del. 2004).........................................................................................23

*Kisor v. Collins*, 338 F. Supp.2d 1279 (N.D. Ala. 2004)............................................................. 22

*Lomas Fin. Corp. v. Norther Trust Co. (In re Lomas Fin. Corp)*, 117 B.R. 64 (S.D.N.Y. 1990).. 23

*Miller v. SmithKline Beecham Corp.*, 769 F.3d 204 (3d Cir. 2014)...............................................21

*O'Brien v. Gladstone*, 2014 WL 2965948 (D.N.J. July 1, 2014)..................................................15

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)..................................................... 14, 16

*Peju Province Winery v. Eibert*, 2007 WL 1468635 (App. Div. May 22, 2007)........................... 23

*Roosevelt Lee LP v. Kim*, 2026 WL 560207 (D.N.J. Feb. 27, 2026)........................................... 20

*Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006)................................................................17

*Travelodge Hotels, Inc. v. Patel*, 2013 WL 4537906 (D.N.J. Aug. 27, 2013)............................... 22

## STATUTES AND RULES

11 U.S.C. § 362...........................................................................................................6

11 U.S.C. § 541(d)..................................................................................................... 12

28 U.S.C. § 157(a)..................................................................................................... 13

28 U.S.C. § 1334(c)(1).............................................................................................1, 18

28 U.S.C. § 1334(c)(2).............................................................................................1, 17

28 U.S.C. § 1452(b)................................................................................................ 1, 20

FED. R. BANKR. P. 9027(a)(1)(C)..................................................................................21

*R.* 4:52-1(b)........................................................................................................21-22

Plaintiffs Merwick Healthcare and Rehab Center LLC ("Merwick Opco"), Venetian Healthcare and Rehab Center LLC ("Venetian Opco"; and collectively with Merwick Opco, the "New Operator Plaintiffs"), Merwick Propco Urban Renewal LLC ("Merwick Propco"), and Venetian Propco LLC ("Venetian Propco"; and collectively with Merwick Propco, the "New Propco Plaintiffs"), respectfully submit this memorandum, pursuant to 28 U.S.C. §§ 1334(c), 1447(c) and 1452(b), and FED. R. BANKR. P. 9014 and 9027(d), in support of their motion for remand of this adversary proceeding to the Superior Court of the State of New Jersey, Middlesex County, Complex Business Litigation Program (the "State Court"), or, alternatively, abstention.

## SUMMARY OF ARGUMENT

The Bankruptcy Court lacks subject matter jurisdiction because the verified complaint's claims are not related to any bankruptcy case (nor do the complaint's claims arise under the Bankruptcy Code, or arise in a case under the Bankruptcy Code). Additionally, mandatory abstention applies pursuant to 28 U.S.C. § 1334(c)(2) or, alternatively, this Court should exercise its power of permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) to return this proceeding to the State Court. Remand also is appropriate on equitable grounds pursuant to 28 U.S.C. § 1452(b).

From a broader, practical perspective, the defendants usurped property held in trust for plaintiffs, consisting of substantially all of the revenue of two Middlesex County skilled nursing facilities ("SNFs")—and the Notice of Removal to this Court is nothing more than a delay tactic, as it was filed the very day after the State Court issued upon the defendants an Order to Show Cause why they should not be directed to return trust property they usurped, and account to the plaintiffs for their theft. Because trust property is not estate property, and the complaint avers

1

exclusively independent, non-estate claims -- all under state law -- remand or abstention is appropriate.

## PERTINENT FACTS

### I.    Overview of the Parties' Transactions and Disputes

On or about December 2, 2024, the plaintiffs entered into purchase agreements for two Middlesex County SNFs: (i) Merwick Care & Rehabilitation Center, located at 100 Plainsboro Road, Plainsboro, New Jersey 08536; and (ii) Venetian Care & Rehabilitation Center, located at 275 John T. O'Leary Blvd., South Amboy, New Jersey 08879.  Rokowsky Cert. Ex. 1 (Verified Complaint) ¶¶ 3, 48-49.  SNFs provide physician-directed long-term and rehabilitative care to patients following surgical and other procedures to address acute, subacute, and other serious conditions, *e.g.*, hip replacements, heart attacks, etc.  *Id.* ¶ 47.  The day-to-day care at an SNF primarily is performed by registered nurses, licensed practical nurses, and certified nursing assistants.  *Id.*

Each SNF purchase transaction consisted of two main agreements: (i) an asset purchase agreement, governing transfer of an SNF's land, buildings, and certain personal property to the New Propco Plaintiffs, who are the new landlords of the SNFs; and (ii) an operations transfer agreement, governing transfer to the New Operator Plaintiffs of the right to act as operator of an SNF.  Ex. 1 ¶ 28.  An SNF's operator, among other things, is the lessee of the SNF's real property.  *Id.* ¶ 29.

An SNF typically obtains a substantial portion of its revenue from Medicare and Medicaid.  Ex. 1 ¶ 30.  As part of those programs, an SNF generally must have a (i) license issued by the Department of Health of the State of New Jersey; and (ii) provider number issued by Medicare and Medicaid.  *Id.* ¶ 31.  Although the new operator is issued a new license number,

the provider number, rather than being issued anew, is transferred by Medicare and Medicaid from the old operator to the new operator. *Id.* ¶ 32.

Because license issuance to a New Operator Plaintiff, and transfer of a provider number from an old operator to a New Operator Plaintiff are not instantaneous, upon closing of an asset purchase agreement a New Operator Plaintiff becomes the lessee of an SNF but cannot then deliver caregiving services on its own. Ex. 1 ¶¶ 33-35. Rather, a New Operator Plaintiff -- until receiving its license and transferred provider number -- subleases the SNF to the old operator. *Id.* at ¶ 36. Simultaneously with the sublease, the New Operator Plaintiffs entered into administrative services agreements with the old operators. *Id.* The old operators thus continue to deliver caregiving services to SNF residents pursuant to the administrative services agreements. But during that transition period the old operator generally utilizes a New Operator Plaintiffs' employees and other personnel to deliver the caregiving services. *Id.* ¶ 37.

On April 23, 2026, the old operators of the SNFs that are the subject of this proceeding, along with certain affiliates, filed in this Court voluntary petitions for bankruptcy protection. *See Merwick Care & Rehabilitation Center, LLC*, Case No. 26-14509-VFP; *In re The Venetian Care & Rehabilitation Center, LLC*, Case No. 26-14510-VFP (the "Lead Bankruptcy Case"). The bankruptcy cases are jointly administered. Lead Bankruptcy Case Dkt. No. 25.

Because the old operator is pertinent to an SNF's caregiving services until a New Operator Plaintiff obtains a new license and transfer of the old operator's provider number, payments by Medicare and Medicaid still are made to a financial institution account in the name of the seller / old operator. Ex. 1 ¶¶ 37-38. The old operator thus receives payments from Medicare and Medicaid for a New Operator Plaintiff's accounts receivable, pending license issuance and transfer of a provider number. *Id.* ¶ 38.

3

During the transition period, the old operator holds the post-closing New Operator Plaintiff-owned receivables payments from Medicare, Medicaid, and other payors in trust for the New Operator Plaintiff.  Ex. 1 ¶ 39.  The trust obligation is critical to a New Operator Plaintiff because post-closing receivables are the New Operator's main revenue source.  *Id.* ¶ 40.  Without that revenue to pay nurses and other staff, the critical care that hundreds of senior and low-income patients receive at the two Middlesex County SNFs that are the subject of this proceeding is immediately imperiled.  *Id.*

## II.   The Post-Closing Receivables Held In Trust For the New Operator Plaintiffs

Trust agreements are standard in the SNF industry because payment for services mainly is from Medicare and Medicaid and, following purchase of an SNF, in the industry there virtually always is the delay between a sale's closing and Medicare and Medicaid's processing of the transfer of provider numbers from the seller to the new operator.  Ex. 1 ¶¶ 34-41, 57-59, 61.  The operations transfer agreements state:

> b.      Effective on the Closing Date, Old Operator sells, assigns and conveys to New Operator [*i.e.*, the New Operator Plaintiffs] the Medicare and Medicaid provider number(s) in use at the [Skilled Nursing] Facility (the "Existing Provider Numbers") ....  Old Operator and New Operator shall execute any and all documents necessary for, and will otherwise cooperate in connection with, the assignment of the Existing Medicare Provider Number.  During the pendency of New Operator's CMS Form 855A [*i.e.*, the form reporting a change in ownership and requesting transfer of a provider number] (the "CHOW"), New Operator may bill Medicare and Medicaid under Old Operator's name and the Existing Provider Numbers, until the intermediary changes the electronic funds transfer account or special payment address to the New Operator ....
>
> c.       … Old Operator agrees to cooperate with New Operator as necessary for enrollment of New Operator in the Medicare and Medicaid programs.

Rokowsky Cert. Ex. 2 and Ex. 3 p. 10 § 6(b)-(c).

The period of time typically required for license issuance and Medicare and Medicaid to process the transfer of a provider number from an old operator to a New Operator Plaintiff, and to begin remitting funds directly to a New Operator Plaintiff, typically ranges from approximately several months to over one year.  Ex. 1 ¶ 33.  During the transition period, a New Operator Plaintiff invoices Medicare and Medicaid for post-closing caregiving, but payments are delivered to the old operator.  *Id.* ¶¶ 37-38.

The operations transfer agreements each state at § 9(d):

> To the extent a Party receives any payments for accounts receivable of another Party, the Parties acknowledge that the Party receiving the payment belonging to another Party shall hold the payment **in trust**, that no Party shall have any right to offset with respect to such accounts receivable, and that the Party erroneously receiving the payment shall have no right, title or interest whatsoever in the payment and shall remit the same to the appropriate other Party within ten (10) days of receipt thereof ....

Ex. 2 and Ex. 3 p. 13 § 9(d) (emphasis added).

The old operator of an SNF thus holds New Operator Plaintiff-owned post-closing receivables in trust for the New Operator Plaintiff whose nurses and other professionals preformed the work resulting in the receivables.  Ex. 1 ¶¶ 39, 62, 64-66.  Trust property, as discussed below, of course is not property of the old operator or its bankruptcy estate—it is a New Operator Plaintiff's property.  Conversion of trust property imperils the critical care to senior and low-income SNF residents because it chokes an SNF's revenue stream, thereby depriving a New Operator Plaintiff of the funds needed to operate the SNF, such as paying nurses, custodial staff, administrative staff, insurance, utilities, etc.  *Id.* ¶ 63.  An SNFs senior and low-income patients thus are left vulnerable upon an old operator converting in-trust Medicare and Medicaid payments because, where an SNF cannot pay nurses and other professional staff, those professionals virtually always cannot, and will not, continue to render critical care.

**III. Plaintiffs Demand the New Operator Plaintiff-Owned In-Trust Receivables Payments, and the Demand is Refused Without Any Purported Justification**

On March 31, 2026, among other things, the New Operator Plaintiffs demanded immediate delivery of trust property to them. Ex. 1 ¶ 67. The demand was refused. *Id.* at ¶ 68. The refusal was part of a long pattern of misconduct consisting of the sellers repeatedly promising to perform their obligations to the plaintiffs, but always failing to do so. *Id.* ¶ 99 *et seq.* On April 23, 2026, the old operators filed voluntary petitions for bankruptcy protection in this Court. *See In re The Venetian Care & Rehabilitation Center, LLC*, Case No. 26-14510-VFP (jointly administered). The individuals who are the old operators' owners and/or prior officers, and the Old Propco Defendants, did not file petitions for bankruptcy protection. They are the defendants in this Adversary Proceeding. At this time, the debtors / old operators act through Chief Wind-Down Officer Jacen Dinoff. Rokowsky Cert. Ex. 4. They have no employees. *Id.* p. 7 ¶ 18. The exist solely to "cooperat[e] with the New Operators to operate the facilities and acting as a conduit through which the New Operators do business." *Id.* ¶ 17. Upon license issuance and transfer of provider numbers, the New Operator Plaintiffs may operate the SNFs independently, and without involvement from the debtors.

**IV. The Plaintiffs Commence the State Court Action**

On May 13, 2026, the plaintiffs commenced the State Court action against the defendants, by simultaneously filing a verified complaint and accompanying motion by order to show cause for a preliminary injunction as to trust property in the defendants' personal possession, custody or control and not subject to this Court's jurisdiction, an accounting, and related relief. Dkt. No. 1-2. The defendants are the natural persons who owned and/or operated the sellers prior to bankruptcy, along with the SNFs' old landlords. But the old operators are not defendants because of the automatic stay pursuant to 11 U.S.C. § 362. Critically, the trust

6

property consisting of payments for the New Operator Plaintiffs' accounts receivable is not part of the old operators' bankruptcy estates, as discussed below.  Moreover, as also discussed below, the automatic stay does not extend to a non-debtor, such as the defendants, and State Court litigation against a non-debtor is routine.

The verified complaint avers claims for:

A.  Conversion, breach of fiduciary duty, an accounting, and related claims (Ex. 1 Counts 1-7);

B.  Breach of contract for violation of the asset purchase agreements among the New Propco Plaintiffs and the Old Propco Defendants (Ex. 1 Counts 8-24,); and

C.  Breach of contract against defendant Hyman Jacobs for breach of his absolute and unconditional personal guaranties of obligations of the sellers due and owing to the plaintiffs (Ex. 1 Counts 25-26,).

On May 28, 2026, the Hon. Gary K. Wolinetz of the Superior Court of New Jersey issued an Order to Show Cause, directing (among other things) the defendants to show cause why an order should not be issued granting the plaintiffs' request for preliminary injunction, accounting, and related relief as to trust property.  Rokowsky Cert. Ex. 5.[2]

## V.   The Notice of Removal

### A.  The Notice of Removal's Inaccurate Statements

On May 29, 2026, the very day after the State Court issued the Amended Order to Show Cause, the defendants filed the Notice of Removal in this Court and the State Court.  Ex. 6.  The Notice of Removal -- which admits that payments for the New Operator Plaintiffs' accounts receivable are trust property -- incorrectly asserts that the State Action is "indisputably related to

---

[2] The action was assigned to the State Court's Complex Business Litigation Program.  When the plaintiffs' proposed Order to Show Cause was filed, Judge Wolinetz (the sole Middlesex County complex business judge) was overseas through the end of May 2026, according to His Honor's law clerk, Daniel Jang.  As such, although the proposed order to show cause was filed simultaneously with the complaint on May 13, it was not signed until May 28.  Mr. Jang advised that another judge could not review the Order to Show Cause because only a CBLP judge may hear CBLP cases.  As such, there was a fifteen-day gap between the Order to Show Cause's filing and the Court signing it.

property, rights, and potential defenses of the Debtors' bankruptcy estates." *Id*. p. 6 ¶ 13.  But

trust property is *not* estate property (discussed below), and the plaintiffs obtaining recovery from

the individual defendants and Old Propco Defendants would not affect the debtors' unspecified

"rights" and "potential defenses."  To the contrary, because the defendants by pillaging assets

were faithless servants to the debtors, they are properly viewed as the debtors' *adversaries*.

Additional incorrect statements in the Notice of Removal abound.  In isolation, some

appear minor, but taken as a whole the volume of incorrect statements renders the Notice of

Removal an utterly unreliable document.  Incorrect statements include:

Notice of Removal ¶ 7: "Counts 8-24 of the Complaint assert claims for alleged breaches

of the OTAs [*i.e.*, operations transfer agreement] against the corporate Defendants."  This is

misleading.  *First*, the *asset purchase* agreements to which the non-debtor Old Propco

Defendants are parties are the subject of the Counts 8-24.  To the extent the Notice of Removal

creates the impression that the plaintiffs seek to enforce the operations transfer agreements

against the debtors, it is wrong.  *Second*, there are no "corporate Defendants", as all parties are

limited liability companies or individuals.  Paragraph 7 also states, "The Debtors [*i.e.*, old

operators] formerly owned Skilled Nursing Facilities ....", but this too is inaccurate because the

debtors, who were lessees, own merely the right to act as operator—the Old Propco Defendants

owned the SNF's property.  Counts 1-7 do not, in defendants' words, "assert various claims

sounding in tort against all Defendants", because Count 2 is asserted only against the individual

defendants, while Counts 3-4 seek a permanent mandatory injunction and an accounting.  The

guaranties, which were annexed to the asset purchase agreements, guaranteed the obligations

under the asset purchase agreements, and not only the operations transfer agreements, contrary to

the defendants' inaccurate assertions.  More broadly, the defendants' attempts to link the

complaint exclusively to the operations transfer agreements and to the debtors are baseless.  All of the defendants are non-debtors, the automatic stay is inapplicable to them, and state court litigation against a non-debtor -- including against an owner or officer of a debtor -- is routine, as discussed below.

Notice of Removal ¶ 8:  The assertion that the verified complaint "necessarily impacts estate funds governed by the Interim Cash Management Order", is meritless.  *First*, trust property is not estate property, discussed below.  *Second*, even if trust property were estate property, which it is not, the Interim Cash Management Order applies only to post-petition trust property.  The verified complaint, on the other hand, seeks monetary and other remedies as to trust property stolen by the defendants pre-petition, or trust property that otherwise is not in a financial institution account of the debtors because it had been usurped pre-petition by the defendants for their personal benefit.  The verified complaint does not target trust property that is the subject of the jurisdiction of the Bankruptcy Court and/or subject to the automatic stay.  The assertion that, "to the extent that the Plaintiffs are seeking an order that [trust] funds [in a Debtor's financial institution account] should be turned over to them, such relief is plainly inconsistent with the requirements of the Interim Cash Management Order", is wrong because the complaint does not seek that relief because it targets stolen trust property which is not the subject of the Interim Cash Management Order.  A (fabricated) request for relief as to trust property exists only in the defendants' Notice of Removal.  All the while, the SNFs' operations -- and the critical care that senior and low-income patients receive -- continue to be jeopardized by stolen trust property in excess of $2,800,000 million.

Notice of Removal ¶ 9:  The Notice of Removal states, "None of the Defendants in the State Court Action is a party to the operations transfer agreements that are the subject of all the

9

claims and alleged contractual obligations that appear at issue in the Complaint."  But the complaint avers tort claims against individual defendants (not breach of contract claims), along with seeking other non-contract remedies.  The contract claims are for breach of the asset purchase agreements and personal guaranties.  The statement that the verified complaint, "is an obvious attempt to circumvent the automatic stay", is both improperly made at this procedural posture because there is no motion to extend the automatic stay to non-debtors, and baseless because state court litigation against non-debtors is permissible, as discussed below.

Notice of Removal ¶ 12:  So the Notice of Removal states, "A number of the claims at issue in the State Court Action implicate this Court's "arising in" and "arising under" jurisdiction ...."  Such assertion approaches frivolity.  The term "arising under title 11" refers to claims created or determined by the Bankruptcy Code, while "arising in a case under title 11" refers to matters existing exclusively because of a bankruptcy case.[3]  Here, however, the complaint avers exclusively state law claims.  There is no credible assertion that arising under or arising in a case jurisdiction potentially exists.

Notice of Removal ¶ 13:  Conclusory assertions that the verified complaint is "indisputably related" to, or "inextricably intertwined" with the debtors' estates are incorrect.  The defendants are non-debtors and state court actions against officers, owners, and other persons affiliated with a debtor (but not in bankruptcy) are routine, as discussed below.[4]

---

[3] *Halligan v. O'Connor (In re Park Ave. Bar & Grill, LLC)*, 2015 Bankr. LEXIS 4344, at *32–33 (Bankr. D.N.J. Dec. 22, 2015).

[4] *See also* Notice of Removal ¶ 5.  Defendant Andrew Masetti, the former chief financial officer of the debtors, and who the defendants state still "maintains oversight over the Cash Management System" of the debtors, *id.*, actually now lives hundreds of miles away from the SNFs in the State of Maine.  Dkt. No. 6.  The debtors have no employees.  Ex. 4 ¶ 18.

B. *Admissions in the Notice of Removal*

The Notice of Removal -- which the defendants could have filed at any time yet waited until the very day after the State Court issued the Order to Show Cause as to turnover of the trust property, an accounting and related relief -- effectively admits that post-closing receivables payments are <u>trust</u> property equitably owned by the New Operator Plaintiffs because the Notice of Removal cites the Interim Cash Management Order stating that fact.  Ex. 6 ¶ 4 ("The Debtors receive and hold in trust for the benefit of the New Operators all amounts received on account of post-closing services performed at the skilled nursing facilities pursuant to the OTAs.").  As such, as the defendants correctly admit, *id.* ¶ 5, "the Debtors now essentially exist as a pass through entity for the collection and distribution of payments to and from the New Operators ...." (internal quotations omitted)—which is a main indicator of trust property.  As such, it cannot be legitimately disputed that post-closing receivables payments are owned by the plaintiffs.

## ARGUMENT

### I.    Trust Property Is Not Property of the Old Operators' Bankruptcy Estates

The verified complaint's largest single category of claims targets recovery of trust property.  Ex. 1 pp. 14-17 Counts 1-4 (averring conversion damages of no less than $2,800,000 for usurpation of trust property, and related claims for breach of fiduciary duty and an accounting).[5]

It is axiomatic that equitable title to trust property belongs to the *owner* of that property and does not become property of the trustee's bankruptcy estate.  *In re Columbia Gas Sys.*, 997 F.2d 1039, 1059 (3d Cir. 1993) ("[A] trustee has no equitable interest in funds it holds in trust …

---

[5] *Compare* Count 8 (second-largest single item of damages, of no less than $1,030,000, for breach of contract) and Counts 9-24 (breach of contract damages ranging from no less than $4,051.75 to $608,790.31, for grand total damages among all claims exceeding $4,000,000).

[i]ndeed, that is the classic definition of a trust - the beneficiary has an equitable interest … while legal title is vested in the trustee."). Because property to which a debtor holds only legal title is not property of a debtor's bankruptcy estate, the verified complaint's claims to recover trust property do not invoke the jurisdiction of the Bankruptcy Court. 11 U.S.C. § 541(d) ("Property in which the debtor holds … only legal title and not an equitable interest … becomes property of the estate … only to the extent of the debtor's legal title … but not to the extent of any equitable interest in such property ....") (emphasis added); *In re Columbia Gas*, 997 F.2d at 1059 (trust funds are "excluded from [the debtor's] bankruptcy estate and are immediately payable" to a person with an equitable title in the trust property); *In re DeLauro*, 207 B.R. 412, 416–17 (Bankr. D.N.J. 1997) (trust property is *not* part of a debtor's bankruptcy estate).

The defendants admit that (i) payments for the New Operator Plaintiffs' accounts receivable are trust property; and (ii) the debtors were nothing (but for the conversion) more than a conduit for the receivable payments to be delivered to the New Operator Plaintiffs. Ex. 6 pp. 3-4 ¶ 4 (Interim Order memorializing that receivables payments are trust property); ¶ 5 (debtors are "a pass-through entity" for trust property). As such, the converted trust property is not, and did not become, property of the bankruptcy estate. *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1181 (3d Cir. 1996) ("If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction.") (citations and internal quotations omitted); *Columbia Gas*, 997 F.2d at 1059 (3d Cir. 1993) (" … Congress intended that when a debtor is a mere conduit for funds to travel from one party to another, it lacks an equitable interest in the monies", and such monies thus are excluded from the bankruptcy estate).

The defendants' assertion, Ex. 6 p. 5 ¶ 8, that the plaintiffs' claims to recover trust property conflicts with this Court's Interim Cash Management Order, is baseless.  That Order speaks only to <u>post</u>-petition receivables payments newly received by a debtor and to be funneled to a New Operator Plaintiff.  Ex. 7 (Interim Order) ¶ 19, second sentence (Order applies to "Post-Closing Receipts <u>on or after the Petition Date</u>") (emphasis added).  But the Interim Cash Management Order of course does <u>not</u> address, much less preclude State Court claims to recover stolen trust property usurped <u>pre</u>-petition.

## II.  <u>The Verified Complaint Does Not Invoke the Bankruptcy Court's Jurisdiction</u>

### A.  *Grounds For Bankruptcy Court Jurisdiction*

28 U.S.C. § 1334(b) provides in pertinent part:

> … the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Although § 1334(b) refers to the "district courts," pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of the United States District Court for the District of New Jersey, dated July 23, 1984 (as amended and supplemented), proceedings invoking the District Court's bankruptcy jurisdiction are automatically referred the Bankruptcy Court.  Bankruptcy Court jurisdiction under § 1334(b) consists of proceedings: (i) "arising under title 11"; (ii) "arising in cases under title 11"; or (iii) "related to cases under title 11."  *Halligan v. O'Connor (In re Park Ave. Bar & Grill, LLC)*, 2015 Bankr. LEXIS 4344, at *32 (Bankr. D.N.J. Dec. 22, 2015 (stating the three categories of Bankruptcy Court jurisdiction).

### B.  *Plaintiffs' Claims Do Not Arise Under the Bankruptcy Code or Arise in a Case Under the Bankruptcy Code*

The Notice of Removal lacks any serious assertion that the verified complaint's claims "arise under title 11" or "arises in a case under title 11."  Arising under the Bankruptcy Code

13

means that a claim is created or determined by the Code. *Halligan*, 2015 Bankr. LEXIS 4344 at

*32 ("[A] proceeding is one 'arising under title 11' if the claims asserted in the matter are

predicated on a right created or determined by title 11.") (citation and internal quotations

omitted). Here, state law creates and determines the plaintiff's claims, and not the Bankruptcy

Code. Thus, no claims arise under the Bankruptcy Code.

Nor do the plaintiffs' claims arise in a bankruptcy case. A "proceeding 'arising in' a case

under the Bankruptcy Code includes various administrative matters 'that are found only in

bankruptcy and which do not exist outside of a bankruptcy case.'" *Id.* at *33. Here, the

complaint's claims under state law are not found in (much less *only* in) the Bankruptcy Code.

They are state law claims independent of the Bankruptcy Code and, absent the debtors'

bankruptcy filing, there would be no credible question the State Court would be the exclusive

forum to adjudicate the complaint's state law claims. The Notice of Removal's assertion (Ex. 6

p. 6 § 12) that, "A number of the claims at issue in the State Court Action implicate this Court's

"arising in" and "arising under" jurisdiction pursuant to 28 U.S.C. § 1334(b)", approaches

frivolity.

### C. Plaintiffs' Claims Are Not Related To a Case Under the Bankruptcy Code

Related to jurisdiction is broad. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)

("... the test for determining whether a civil proceeding is related to bankruptcy is whether *the

outcome of that proceeding could conceivably have any effect on the estate being administered in

bankruptcy*."). But it is not unlimited. *Halligan v. O'Connor (In re Park Ave. Bar & Grill,

LLC)*, 2015 Bankr. LEXIS 4344, at *35 (Bankr. D.N.J. Dec. 22, 2015) ("As broad as the

conceivability test is under *Pacor* and its progeny, it is not without limits.").

14

Here, the defendants effectively assert that, because the old operators have filed voluntary petitions, it bootstraps the defendants into the bankruptcy case, including affording those non-debtors the benefit of the automatic stay. But that is not the law. *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1181 (3d Cir. 1996) ("[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [related to jurisdiction].") (citation and internal quotations omitted).

The Notice of Removal's speculation that state law claims "could trigger indemnification" (Ex. 6 ¶ 14) involving a debtor does <u>not</u> create related to jurisdiction. Only *evidence* of an absolute indemnity obligation may potentially invoke related to jurisdiction. Guesswork in the Notice of Removal, or other assertions regarding indemnity which *might* exist -- and which assertions lack factual or legal support -- do not transform a State Court action into a bankruptcy proceeding. *In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009) (mere possibility of indemnity-based liability insufficient to create related to jurisdiction); *O'Brien v. Gladstone*, 2014 WL 2965948, *3 (D.N.J. July 1, 2014) ("[A] right to indemnification from a bankruptcy debtor does not necessarily create "related to" bankruptcy jurisdiction.") (citing *W.R. Grace*). Here, trust property is not estate property, and the contract claims seek recovery under contracts between plaintiffs and non-debtors. As such, the verified complaint's claims do not invoke related to jurisdiction.

The defendants' assertion (Ex. 6 pp. 6-7 ¶ 14) that the complaint's claims would "redirect future estate funds" is baseless because, as discussed above, the complaint does not target estate funds, much less future estate funds. The complaint's accounting claim targets the funds usurped by the defendants for their personal gain prior to the Petition Date, and the accounting thus

15

would be based on the *defendants'* records as to property they usurped. To the extent discovery would be required of a debtor, such discovery would be minimal—and routine. *In re Manley Toys Ltd.*, 2018 Bankr. LEXIS 504, at *14-15 (Bankr. D.N.J. Feb. 23, 2018) (automatic stay "does not bar discovery aimed at a debtor, so long as the discovery pertains to claims or defenses of a non-debtor party").

The assertion that state law claims against non-debtors would "require the attention and focus of the Debtors' personnel and resources" (Ex. 6 ¶ 14), is baseless and irrelevant. *First*, requiring the attention of a debtor's representatives to respond to State Court litigation is not a *Pacor* factor and thus fails to create related to Bankruptcy Court jurisdiction. *Second*, the debtors admit they are out of business, except for their limited remaining life as pass through entities until provider numbers are transferred to an SNF's new operator. Ex. 4 ¶¶ 11-12, 15-18; Ex. 6 ¶ 5. There is no assertion that the defendants perform *any* work for the debtors, who are now operated by the Chief Wind-Down Officer, Jacen Dinoff. Ex. 4 ¶ 18 ("The Debtors do not operate any of the facilities, they do not own or lease any property, and they have no employees."). To the extent Andrew Masetti -- an approximately 69 year-old individual who appears to have retired to the State of Maine -- still "maintains oversight" (Ex. 6 ¶ 5) of the debtors' Cash Management System (the very system from which funds were usurped), to the extent the Wind-Down Officer does not terminate Mr. Masetti's services, any burden upon Mr. Masetti in his capacity as an assistant to the Wind-Down Officer would be non-existent because his role focuses only on post-petition receivables. The complaint targets pre-petition conduct.

In short, the Notice of Removal's myths of fear, anxiety, or burdensome consequences of the State Court action are meritless.

16

### III. **Mandatory Abstention Applies**

By statute, set forth below, where a Bankruptcy Court exercises jurisdiction over a state law claim solely because of related to jurisdiction, the Bankruptcy Court *must* abstain from adjudicating the dispute in certain circumstances that are plainly present here:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court <u>shall</u> abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

Mandatory abstention thus applies where the following five factors are established:

> (1) the proceeding is based on a state law claim or cause of action;
>
> (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11;
>
> (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case;
>
> (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and
>
> (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006) (reciting the above factors).

Here, it cannot be legitimately disputed that the verified complaint avers exclusively state law claims. The Notice of Removal (Ex. 6) does not assert to the contrary. Nor does the Notice of Removal contain any serious assertion (because it cannot) that the verified complaint arises under the Bankruptcy Code or arises in a case under the Bankruptcy Code, discussed above.

A federal court of course would not have subject matter jurisdiction absent the complaint allegedly being related to the bankruptcy case.  Diversity jurisdiction is absent because (among other things) defendant Christoper Metternich is a citizen of the State of New Jersey.  Nor does this action arise under the Constitution or federal laws.  Finally, this action was commenced in the State Court and may be timely adjudicated in that Court's specialized Complex Business Litigation Program.  *Bondi v. Citigroup, Inc.*, 2004 WL 7200307, at *4 (D.N.J. Nov. 17, 2004) (courts "routinely find" that actions originally commenced in state court may be timely adjudicated there, and mandatory abstention thus applies); *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 757 (D.N.J. 1996) (invoking mandatory abstention where "plaintiff commenced the action in New Jersey Superior Court, and the removing defendants have demonstrated no concrete reason why the action could not be 'timely adjudicated' in that forum").  Each of the five mandatory abstention factors is satisfied.

## IV.  <u>Alternatively, This Court Should Exercise Its Power of Permissive Abstention</u>

Although mandatory abstention applies, even if it did not, this Court should exercise its discretion -- vested by statute, set forth below -- to invoke permissive abstention to return this proceeding to the State Court:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

When considering whether to permissively abstain, a Bankruptcy Court considers: (1) the effect or lack thereof on the efficient administration of the estate if a court abstains; (2) the extent to which state law predominates over bankruptcy issues; (3) the difficulty or unsettled nature of

the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of serving state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's dockets; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. *In re Farina*, 2025 WL 3273247, at *7 (Bankr. D.N.J. Nov. 24, 2025) (reciting the above factors). "[N]ot all [of the above] factors necessarily need to be considered, and courts may apply the factors flexibly depending on the facts and issues of the case." *Id.* (citation and internal quotations omitted). No single factor is outcome determinative. *Ezell v. PHH Mtg. Corp.*, 2023 WL 5049471, at *3 (D.N.J. Aug. 8, 2023).

Here, state law exclusively is the subject of this proceeding against the non-debtors that, absent the old operators' bankruptcy petitions, would not remotely be subject to a federal court's jurisdiction. Factors 2, 8 and 12 thus favor abstention. Also favoring abstention are factors 5 and 7 because there is no core proceeding presented by the State Action, nor other proceedings among the parties other than the State Court Action. Because the State Court action would not impede the bankruptcy cases, factors 1 and 6 also favor abstention. Factor 3, 4 and 9 favor abstention because the State Court's Complex Business Litigation Program exists precisely to adjudicate state law matters such as this proceeding. Factors 10 favors abstention because the State Court action is not forum shopping.[6]

---

[6] Factor 11 is neutral because plaintiffs do not seek a jury trial, including because of (among other things) jury waivers in the asset purchase agreements.

Because the plaintiffs' claims lack even a remote connection to bankruptcy, the Notice of Removal would appear to compel the conclusion that it was filed solely to try to avoid answering the pending Order to Show Cause issued by the State Court as to serious conversion of trust property, breach of fiduciary duty, and related claims.  Indeed, even though the State Court action had been pending for weeks, the Notice of Removal was filed only upon the State Court issuing the signed Order to Show Cause.  State law not only predominates, it applies exclusively to the verified complaint's claims, and this proceeding best belongs in the State Court's Complex Business Litigation Program.

## V.    Equitable Remand Is Appropriate

Although absence of related to jurisdiction, mandatory abstention, and permissive abstention make equitable remand moot, in the event this Court did have jurisdiction over the State Court action, and abstention were inapplicable, this Court should exercise its power of equitable remand.  28 U.S.C. § 1452(b) states in pertinent part:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

Equitable grounds under 28 U.S.C. § 1452(b) exist where remand would be "reasonable, fair, or appropriate."  *Geruschat v. Ernst Young LLP (In re Seven Fields Development Corp.)*, 505 F.3d 237, 245 (3d Cir. 2007).  Factors affecting whether remand would be appropriate -- which factors are "essentially identical" to the permissive abstention factors -- are: (1) the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to involuntarily removed defendants.  *Roosevelt Lee LP v. Kim*, 2026 WL 560207, at *4 (D.N.J. Feb. 27, 2026) (reciting the above factors); *In re*

20

*Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 759–60 (Bankr. D.N.J. 1996) (equitable remand and permissive abstention "are essentially identical, and, therefore, a court's analysis is substantially the same for both types of relief").

Here, equitable remand applies because this action involves exclusively state law claims, for which the State Court has established the Complex Business Litigation Program (factors 2-4). Remand would benefit administration of the bankruptcy cases by excising from this Court state law claims targeting non-estate property (factors 1 and 5).  Removal also would prejudice the Doe Defendnats, who upon being identified will find themselves awkwardly bound to litigate state law claims in Bankruptcy Court (factor 7).[7]

For the above reasons, equitable remand would be appropriate.

## VI.  The Notice of Removal is Defective Because It Failed to Include Process and Orders Issued by the State Court

Pursuant to FED. R. BANKR. P. 9027(a)(1)(C), a Notice of Removal must "be accompanied by a copy of all process and pleadings."  The Notice of Removal thus is defective because it did not include the State Court's original and amended Orders to Show Cause, which is State Court process pursuant to *R.* 4:52-1(b) (stating in pertinent part that, "If the order to show cause issues upon the filing of the complaint, no summons shall issue in the action").

Removal statutes are strictly construed, and favor remand.  *Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (removal statutes are "strictly construed against removal and all doubts should be resolved in favor of remand") (citation and internal quotations omitted). Failure to include process required by FED. R. BANKR. P. 9027(a)(1)(C) thus is fatal.  *Comtrade Ltd. v. U.S.*, 2005 WL 5643875, at *1 (S.D. Fla. Nov. 7, 2005) (failure to attached state court

---

[7] Factor 6 is again neutral because (among other things) plaintiffs do not seek a jury trial, and the asset purchase agreements contain jury trial waivers.

pleadings to notice of removal merits remand); *Employers-Shopmens Local 516 Pension Trust v. Travelers Cas. & Sur. Co. of Am.*, 2005 WL 1653629, at *2–4 (D. Or. July 6, 2005) (failure to include exhibits to amended pleading with notice of removal warranted remand); *Kisor v. Collins*, 338 F. Supp.2d 1279, 1280–81 (N.D. Ala. 2004) (summons omitted from notice of removal, warranting remand).

Here, the Notice of Removal failed to include all process issued by the State Court. The Hon. Gary K. Wolinetz issued a signed Order to Show Cause on May 28, 2026, along with an amended Order to Show Cause the same day. Ex. 5. The Notice of Removal, however, failed to include both the original and amended Order to Show Cause, and thus failed to include process issued by the State Court. *R.* 4:52-1(b).

Even if there were Bankruptcy Court jurisdiction, and even if abstention and equitable remand were inapplicable, remand still would apply because of the defective Notice of Removal.

## VII.  Defendants' Automatic Stay Assertions Are Baseless

Although, to the plaintiffs' knowledge, there is no pending motion in a debtor's bankruptcy case to extend the automatic stay to a defendant in this proceeding, it is worth noting that the Notice of Removal's assertion (Ex. 6 ¶ 9) that, "the Complaint is an obvious attempt to circumvent the automatic stay", is at war with black-letter law. Absent unusual circumstances not presented by this state law dispute, the automatic stay applies only to a debtor, and not to a non-debtor. *Travelodge Hotels, Inc. v. Patel*, 2013 WL 4537906, at *5 (D.N.J. Aug. 27, 2013) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a debtor.") (citation and internal quotations omitted). Moreover, "it is universally acknowledged that [the] automatic stay … may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to [a] debtor."

22

*Id.*; *Peju Province Winery v. Eibert*, 2007 WL 1468635, at *5 (App. Div. May 22, 2007)

(automatic stay inapplicable to "non-debtor co-defendants, such as general shareholders,

partners, or officers of the debtor corporation").

The Notice of Removal's citations to out-of-state cases (Ex. 6 ¶ 16) are unpersuasive. In

*Lomas Fin. Corp. v. Norther Trust Co. (In re Lomas Fin. Corp)*, 117 B.R. 64 (S.D.N.Y. 1990),

for example, non-debtors were "irreplaceable" to and "involved heavily" in the debtor's

reorganization, and litigation against them, individually, was deemed to be deleterious to the

bankruptcy case that they were indispensable to. In contrast, the Jacobs, Masetti and Metternich

are not irreplaceable to the debtors. Moreover, because the debtors operate through a Chief

Wind-Down Officer and have no employees, Ex. 4 ¶ 18, the defendants are not "involved

heavily" in the debtors' reorganization—indeed, there apparently is no reorganization because a

Wind-Down Officer has been appointed for the debtors that effectively no longer operate in

connection with a fully-sold New Jersey SNF portfolio, *id.* ¶¶ 11, 15. Finally, *Lomas* concerned

a debtor's request for a preliminary injunction extending the automatic stay to non-debtors.

Here, however, neither the debtors nor anyone else has sought such an injunction.[8]

### CONCLUSION

For the foregoing reasons, the Court should issue an Order remanding this adversary

proceeding to the State Court or, alternatively, either abstaining from hearing or remanding the

proceeding, along with granting such other relief as is just and proper.

---

[8] The Alabama and Delaware cases cited in the Notice of Removal are inapposite for similar reasons. *See In re Jefferson County, Alabama*, 491 B.R. 277, 284, 287–88, 290 (Bankr. N.D. Ala. 2013) (extending automatic stay because of "identity of interests" between debtor and non-debtor, "substantial burden" of discovery upon the debtor, and debtor was real party in interest); *Kaiser Group Int't, v. Kaiser Aluminum & Chemical Corp. (In re Kaiser Aluminum Corp., Inc.)*, 315 B.R. 655, 659 (D. Del. 2004) (insurance proceeds paid to the debtor were the subject of the plaintiff's claims).

Dated: June 16, 2026

**JONATHAN M. PROMAN, ESQ.**

By: *s/ Jonathan M. Proman*
   Jonathan M. Proman

30 Wall Street, Eighth Floor
New York, New York 10005
(917) 524-7566
jproman@promanlaw.com

*Attorney for Plaintiffs*
*Merwick Healthcare and Rehab Center LLC,*
*Venetian Healthcare and Rehab Center LLC,*
*Merwick Propco Urban Renewal LLC,*
*and Venetian Propco LLC*

24