**JONATHAN M. PROMAN, ESQ.**
Attorney ID No. 025832004
30 Wall Street, Eighth Floor
New York, New York 10005
(917) 524-7566
jproman@promanlaw.com
*Attorneys for Plaintiffs*
*Merwick Healthcare and Rehab Center LLC,*
*Venetian Healthcare and Rehab Center LLC,*
*Merwick Propco Urban Renewal LLC,*
*and Venetian Propco LLC*

| | |
|---|---|
| MERWICK HEALTHCARE AND REHAB CENTER LLC, VENETIAN HEALTHCARE AND REHAB CENTER LLC, MERWICK PROPCO URBAN RENEWAL LLC, and VENETIAN PROPCO LLC, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY Docket No. MID-L-          -26 Civil Action CBLP Action |
| Plaintiffs, | |
| - against - | **VERIFIED COMPLAINT, DESIGNATION OF TRIAL COUNSEL, AND RULE 4:5-1 AND 1:38-7(b) CERTIFICATIONS** |
| MICHAEL JACOBS, JOSHUA JACOBS, HYMAN JACOBS, DAVID JACOBS, ANDREW MASETTI, CHRISTOPHER METTERNICH, MILLSTONE RIVERVIEW REAL ESTATE URBAN RENEWAL LLC, VENETIAN HEALTHCARE, LLC, and DOE DEFENDANTS 1-10, | |
| Defendants. | |

Plaintiffs Merwick Healthcare and Rehab Center LLC ("Merwick Opco"), Venetian

Healthcare and Rehab Center LLC ("Venetian Opco", and collectively with Merwick Opco, the

"New Operator Plaintiffs"), Merwick Propco Urban Renewal LLC ("Merwick Propco"), and

Venetian Propco LLC ("Venetian Propco", and collectively with Merwick Propco, the "New

Propco Plaintiffs"), by their undersigned counsel, for their verified complaint against defendants

Michael Jacobs, Joshua Jacobs, Hyman Jacobs, David Jacobs, Andrew Masetti, Christopher

1

Metternich, Millstone Riverview Real Estate Urban Renewal LLC ("Old Merwick Propco"), Venetian Healthcare, LLC ("Old Venetian Propco"; and collectively with Old Merwick Propco, the "Old Propco Defendants"), state as follows.

## NATURE OF THE ACTION

1. The individual defendants converted trust property in excess of $2.8 million owned by the New Operator Plaintiffs, who purchased the rights to operate two Middlesex County skilled nursing facilities ("SNFs") pursuant to agreements dated December 2, 2024.

2. The massive theft imperials the critical caregiving to residents of the SNFs, including senior citizens and low-income persons.

3. The SNFs that are the subject of this action are (i) Merwick Care & Rehabilitation Center, located at 100 Plainsboro Road, Plainsboro, NJ 08536 (the "Merwick SNF"); and (ii) Venetian Care & Rehabilitation Center, located at 275 John T. O'Leary Blvd., South Amboy, NJ 08879 (the "Venetian SNF").

4. As part of the purchase, and as is standard in the SNF industry, the sellers -- which the individual defendants operated at all pertinent times -- entered into two agreements for each SNF: (i) an asset purchase agreement, conveying real property and certain personal property from the Old Propco Defendnats to the New Propco Plaintiffs; and (ii) an operations transfer agreement, transferring to the New Operator Plaintiffs the right to operate the SNFs.

5. After closing of an asset purchase agreement, a transition period exists during which an old operator participates in an SNF's caregiving, including that -- during the transition period -- a new operator's accounts receivable are paid into a financial institution account in the name of a seller operating company.

2

6. The seller holds the receivables payments in trust for the new operator pursuant to an express trust agreement, which funds consist of substantially all of the SNF's revenue.

7. The individual defendants are the natural persons who caused the sellers to convert the trust property, along with engaging in related torts.

8. In addition to the plaintiffs' tort claims, the Old Propco Defendants breached the asset purchase agreements, and are liable to the New Propco Plaintiffs for breach of contract.

9. Defendant Hyman Jacobs guaranteed the obligations of the sellers under the assert purchase and operations transfer agreements, and is liable under those guaranties for the sellers' breaches of contract.

10. On April 23, 2026, the seller operating companies filed voluntary petitions for bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey.

11. The automatic stay pursuant to 11 U.S.C. § 362 precludes legal action in this Court against the seller operating companies.

12. But the automatic stay does not extend to the individuals defendants or to the Old Propco Defendants.

## PARTIES

13. Plaintiff Merwick Opco is a limited liability company organized and existing under the laws of the State of New Jersey with its registered office at 1608 Route 88, Suite 200, Brick, New Jersey 08724, and doing business at 100 Plainsboro Road, Plainsboro, New Jersey 08536.

14. Plaintiff Venetian Opco is a limited liability company organized and existing under the laws of the State of New Jersey with its registered office at 1608 Route 88, Suite 200,

Brick, New Jersey 08724, and doing business at 275 John T. O'Leary Boulevard, South Amboy, New Jersey 08879.

15.  Plaintiff Merwick Propco is a limited liability company organized and existing under the laws of the State of New Jersey with its registered office at 1608 Route 88, Suite 200, Brick, New Jersey 08724, and doing business at 100 Plainsboro Road, Plainsboro, New Jersey 08536.

16.  Plaintiff Venetian Propco is a limited liability company organized and existing under the laws of the State of New Jersey with its registered office at 1608 Route 88, Suite 200, Brick, New Jersey 08724, and doing business at 275 John T. O'Leary Boulevard, South Amboy, New Jersey 08879.

17.  Defendant Michael Jacobs is an individual and, upon information and belief, he is domiciled in New York State and Chief Executive Officer of the Old Propco Defendants and the non-party in-bankruptcy sellers of the right to operate the SNFs.

18.  Defendant Joshua Jacobs is an individual and, upon information and belief, he is domiciled in New York State and President of the Old Propco Defendants and the non-party in-bankruptcy sellers of the right to operate the SNFs.

19.  Defendant David Jacobs is an individual and, upon information and belief, he is domiciled in New York State and an officer of the Old Propco Defendants and the non-party in-bankruptcy sellers of the right to operate the SNFs.

20.  Defendant Hyman Jacobs is an individual and, upon information and belief, he is domiciled in New York State, the father of Michael, Joshua, and David Jacobs, and a member and manager of the Old Propco Defendants and the non-party in-bankruptcy sellers of the right to operate the SNFs.

4

21. Defendant Andrew Masetti is an individual and Chief Financial Officer of the Old Propco Defendants and the non-party in-bankruptcy sellers of the right to operate the SNFs.

22. Defendant Christopher Metternich is an individual and Chief Operating Officer of the Old Propco Defendants and the non-party in-bankruptcy sellers of the right to operate the SNFs.

23. Upon information and belief, defendant Old Merwick Propco is a limited liability company organized and existing under the laws of the State of New Jersey with its registered office reportedly at 100 McClellan Street, Norwood, New Jersey 07648.

24. Upon information and belief, defendant Old Venetian Propco is a limited liability company organized and existing under the laws of the State of New Jersey with its registered office reportedly at 100 McClellan Street, Norwood, New Jersey 07648.

25. Michael Jacobs, Joshua Jacobs, David Jacobs, Hyman Jacobs, Andrew Masetti, and Christopher Metternich each intentionally caused and participated in the old operators' and Old Propco Defendants' conduct set forth in this verified complaint.

26. Doe Defendants 1-10 are additional natural persons who participated in an entity defendant's conduct averred in this pleading, along with other persons who engaged in such conduct, and whose identities are currently unknown to the plaintiffs.

## PERTINENT FACTS

*A. The SNF Purchase Agreements*

27. On or about December 2, 2024, the plaintiffs entered into the purchase agreements for the Merwick SNF and Venetian SNF.

5

28. Each transaction consisted of two main agreements: (i) the asset purchase agreement, governing transfer of an SNF's real property and certain personal property; and (ii) the operations transfer agreement, governing transfer of the right to act as operator of an SNF.

29. An SNF's operator, among other things, is the lessee of the SNF's real property.

30. An SNF typically obtains a substantial portion of its revenue from Medicare and Medicaid.

31. As part of Medicare and Medicaid, an SNF operator is issued (i) a license by the Department of Health of the State of New Jersey; and (ii) provider numbers by Medicare and Medicaid, in order to receive payments from those programs.

32. Medicare and Medicaid typically transfer an old operator's provider number to the new operator, in lieu of issuing a new provider number.

33. State and federal authorities typically require approximately several months to over a year to transfer a provider number.

34. A condition precedent to transfer of Medicare and Medicaid provider numbers is issuance of a license by the Department of Health to the new operator.

35. Absent a provider number and license, Medicare, Medicaid, and also third-party payors such as private insurance, each will not enter into contracts with a new operator.

36. Pending license issuance, the new operators of the Merwick SNF and Venetian SNF each entered into with the old operators (i) a sublease, to lease the SNF back to the old operator pending issuance of a license; and (ii) an administrative services agreement, pursuant to which the old operator -- using its existing license and provider number -- participates in the operation of the SNF, but using a purchasing entity's employees and other personnel.

37.     During the transition period while a sublease and administrative services agreement are in effect, even though the new operator's personnel generates accounts receivable, Medicare, Medicaid, and all other payors remit payment for those receivables into a financial institution account in the name of the old operator, as the old operator is the entity with the license and provider number during the transition period.

38.     The old operator thus receives payments for the new operator's accounts receivable, pending issuance of a new license and transfer of Medicare and Medicaid provider numbers to the new operator.

39.     The old operator holds the post-closing buyer-owned receivables payments in trust for the new operator, pursuant to the parties' operations transfer agreements.

40.     The trust obligation is critical to a new operator because post-closing receivables are the new operator's main revenue source.  Without that revenue, a new operator typically cannot pay nurses and other medical professionals.

41.     Without any excuse whatsoever, and despite demand by the New Operator Plaintiffs, the individual defendants, who operate the sellers, have caused the sellers to refuse to deliver to the New Operator Plaintiffs the receivables payments held in trust and consisting of the New Operator Plaintiffs' property.

42.     Because the usurped New Operator Plaintiff-owned receivables comprise substantially all of the revenue generated by the Middlesex County SNFs that are the subject of this action, conversion of the trust property threatens the SNFs' existence.

43.     To ensure the SNFs' continued operations and critical care to patients, and because conversion of trust property is egregious theft, the plaintiffs seek a permanent mandatory

7

injunction directing the defendants to deliver in-trust New Operator Plaintiff-owned funds to the New Operator Plaintiffs, an accounting, damages, and related relief.

44. Separate and independent from the above torts, the Old Propco Defendants have breached contractual indemnification and other obligations owed to the plaintiffs, for which plaintiffs seek money damages, along with specific performance of conditions precedent to the issuance of licenses and transfer of provider numbers to the New Operator Plaintiffs, as set forth below.

45. As part of the purchase agreements, defendant Hyman Jacobs personally guaranteed obligations of the sellers to the plaintiffs.

46. Because Hyman Jacobs breached his obligations under his personal guaranties, he is liable to the plaintiffs for money damages.

## B. The Skilled Nursing Facilities

47. SNFs, among other things, provide physician-directed medical care to patients following surgical and other procedures to address acute, subacute, and other serious conditions, *e.g.*, hip replacements, heart attacks, etc. The day-to-day care at an SNF primarily is performed by registered nurses, licensed practical nurses, and certified nursing assistants.

48. The purchase agreements for the sale of the Merwick SNF and Venetian SNF to the plaintiffs consist in pertinent part of an (i) Operations Transfer Agreement ("OTA"); and (ii) Asset Purchase Agreement ("APA").

49. Separate OTAs and APAs were entered into for each facility, for a grand total of four such contracts.

50. The APAs conveyed land, buildings, improvements, and certain personal property to the New Propco Plaintiffs, who are the current landlords of the SNFs.

51. The OTAs conveyed to the New Operator Plaintiffs the right to act as new operators of the SNFs.

52. The New Operator Plaintiffs are the current lessees of the SNFs.

53. Through subleases, the SNFs were leased back to the old operators pending issuance of licenses and provider numbers to the New Operator Plaintiffs.

54. Through administrative services agreements, the old operators have used their existing licenses and Medicare and Medicaid provider numbers to participate in the operation of the SNFs, but using the New Operator Plaintiffs' employees and other personnel.

55. Accounts receivable for caregiving services are owned by the New Operator Plaintiffs.

56. The plaintiffs performed all of their obligations under the parties' agreements prior to, upon, and after closings pursuant to those agreements.

*C. Trust Agreements For Post-Closing Receivables*

57. Trust agreements are standard in the SNF industry pending issuance of a license and transfer of a provider number to the purchaser of an SNF's operations.

58. The OTAs provide at p. 10 § 6(b):

> Effective on the Closing Date, [an] Old Operator [*i.e.*, an Old Operator Defendant] sells, assigns and conveys to [a New Operator Plaintiff] the Medicare and Medicaid provider number(s) in use at the [Skilled Nursing] Facility (the "Existing Provider Numbers") .... Old Operator and New Operator shall execute any and all documents necessary for, and will otherwise cooperate in connection with, the assignment of the Existing Medicare Provider Number. During the pendency of New Operator's CMS Form 855A [*i.e.*, the form reporting a change in ownership and requesting transfer of a provider number] (the "CHOW"), New Operator may bill Medicare and Medicaid under Old Operator's name and the Existing Provider Numbers, until the intermediary changes the electronic funds transfer account or special payment address to the New Operator.

9

59.     As such, the parties in the OTAs memorialized that the New Operator Plaintiffs would use the old operators' provider numbers pending Medicare and Medicaid's transfer of those numbers to the New Operator Plaintiffs.

60.     The OTAs also provide at § 6(c) that, "Old Operator agrees to cooperate with New Operator as necessary for enrollment of New Operator in the Medicare and Medicaid programs.

61.     The OTAs create trust obligations upon each of the old operators, who are now in bankruptcy.

62.     An old operator holds new operator-owned post-closing receivables in trust for a New Operator Plaintiff whose personnel performed work resulting in the receivables.

63.     Conversion of trust property thus imperils the critical care to senior citizens and low-income persons because it chokes an SNF's revenue stream, thereby depriving the new operator of the new operator-owned funds needed to fund an SNF's operations, such as paying nursing and other professional staff, janitors, administrative staff, insurance, utilities, etc.

64.     The Merwick and Venetian OTAs (at p. 13 § 9(d)) each state:

> To the extent a Party [*i.e.*, a New Operator Plaintiff or Old Operator Defendant] receives any payments for accounts receivable of another Party, the Parties acknowledge that the Party receiving the payment belonging to another Party shall hold the payment **in trust**, that no Party shall have any right to offset with respect to such accounts receivable, and that the Party erroneously receiving the payment shall have no right, title or interest whatsoever in the payment and shall remit the same to the appropriate other Party within ten (10) days of receipt thereof, and if not paid in full by such date, any amount outstanding shall bear interest at the Default Rate until paid in full.  (Emphasis added.)

65.     The OTAs thus impose upon the old operators the duty to hold Medicare and Medicaid payments for post-closing caregiving in trust for the New Operator Plaintiffs.

66.     The trust relationship described above is not unique to this action's OTAs, but is industry practice.

*D. The Individual Defendants Convert the New Operator Plaintiffs' Trust Property*

67.     By letter dated March 31, 2026, and at earlier times, the New Operator Plaintiffs demanded that the individual defendants cause the old operators to comply with the trust obligation to deliver payments for post-closing receivables to the New Operator Plaintiffs.

68.     The old operators refused the above demand.

69.     The old operators usurped the trust property.

70.     The usurpation was performed by and at the direction of Michael Jacobs, Joshua Jacobs, David Jacobs, Hyman Jacobs, Andrew Masetti, and Christopher Metternich.

71.     The Jacobs, Masetti, and Metternich are the principal officers and natural persons through whom the seller entities act.

72.     As discussed in Counts One through Four below, because of the conversion of post-closing Medicare and Medicaid receivables payments, a permanent mandatory injunction for the delivery of trust property held by the individual defendants and Old Propco Defendants to the New Operator Plaintiffs, money damages, an accounting, and related relief are appropriate.

**IN ADDITION TO, AND SEPARATE AND INDEPENDENT FROM, CONVERSION OF TRUST PROPERTY, THE OLD PROPCO DEFENDANTS BREACHED CONTRACTUAL INDEMNITY AND OTHER OBLIGATIONS TO THE PLAINTIFFS**

73.     The sellers pursuant to the APAs obligated themselves, among other things, to (i) convey assets free and clear of encumbrances and liabilities; (ii) convey assets consistent with representations, warranties, and obligations set forth in those agreements; and (iii) to the extent encumbrances or liabilities existed, eliminate them.

74.     By way of example only, under the APAs § 1(a)-(b), the Old Propco Defendants agreed, among other things, to convey assets "free and clear of all claims, liens, … restrictions, [or] encumbrances ....", along with expressly agreeing that, "[the New Propco Plaintiffs] shall not assume and shall not be liable [for], and [the Old Propco Defendants] shall retain and remain liable, for any debts, liabilities or obligations of any kind or nature ...."

75.     The APAs throughout the agreement reiterate the above obligations. *See, e.g.*, § 5(a)(i) (Purchased Assets delivered free and clear of Exceptions a condition to Closing); § 5 (a)(iv)-(v) (no lawsuits filed or threatened, nor material adverse changes to physical condition or other aspects of Facilities on Closing Date); § 5 (a)(viii) (reps and warranties true and complete as of Closing); § 5 (a)(x) (no government claims); § 7(a) (pending Closing Sellers shall maintain Purchased Assets without deterioration of value); § 7(e)-(f) (creating any Exception or causing reps and warranties to become untrue or violated pending Closing prohibited); § 7(h) (duty to inform Purchasers of a material event adversely affecting Purchased Assets); § 8(c), (h) (good and marketable title to Purchased Assets, and no Exceptions); § 8(d) (building in operating condition and compliant with applicable laws); § 8(e) (no environmental matters); § 8(j) (certificates, licenses and permits in good standing); § 8(o) (no pending or threatened investigations or governmental actions); § 8(p), (q) (compliance with appliable laws, and no notice of violations); § 8(s) (no liabilities expected to be asserted against a Purchaser, except as disclosed on Financial Statements or Schedule 8(s)); and § 8(w) (no untrue facts or omissions).

76.     The OTAs also require a transfer free and clear of all claims, liens, restrictions, or encumbrances.

77.     By way of example only, under the OTAs § 15, the Old Operator Defendants agreed to (i) "discharge any … tax … relating to any period prior to the Closing Date"; (ii)

12

"timely pay all taxes or other obligations and liabilities which are due and payable"; and (iii) "pay before the same shall become due all taxes, duties and other governmental charges that accrue prior to the Closing Date, which, if not paid, would create … a lien on any of the assets of New Operator or for which New Operator could become liable ...."

78.   By way of further example, the Old Operator Defendants represented and warranted, as of an OTA's Effective Date and Closing Date, among other things, that there were no pending or threatened government actions (§ 18(d)); they were in compliance with applicable laws, regulations, and ordinances (§ 18(j)); taxes and governmental charges had been paid (§ 18(y)); there was nothing causing a material adverse effect upon the Sellers or their to-be-sold assets (§ 18(gg)); and no inaccurate or misleading statements were made (§ 18(ii)).

79.   Moreover, the Old Operator Defendants agreed, among other things, to maintain and repair real and personal property (§ 2(b)(ii)); avoid or remove liens, claims and encumbrances (§ 2(b)(vii)); perform all contractual and other obligations (§ 2(b)(xiii)); promptly inform the New Operator Plaintiffs in writing of material events affecting a facility, *e.g.*, a Legionella matter (§ 2(b)(xv)); not cause or permit an Exception to exist (§ 2(c)(vi)); discharge or transfer Delinquent Residents (§ 2(d)); and confirm there are no filed or threatened lawsuits or claims (§ 3(a)(viii)).

80.   The APAs broadly obligate the Old Propco Defendants to indemnify the plaintiffs for losses—including a breach of the above (or other) contractual obligations under an APA or OTA.

81.   By way of example only, the APAs' § 11(b) state:

> From and after the Closing, Seller agrees to indemnify, save, protect, defend and hold harmless Purchaser and its affiliates … from and against all Losses arising from, out of, or relating to (i) Seller's ownership of the Purchased Assets prior to the Closing Date, (i) any inaccuracy or breach of any

13

representation, warranty, covenant, agreement or obligation of Seller contained in this Agreement or in any of the Other Documents and (ii) any of the Excluded Assets or Retained Liabilities.

82.   Losses are broadly defined in the APAs (§ 11(a)) and OTAs (§16 (a)) as, among other things, "claims, liabilities, losses, damages, demands and causes of action of any nature whatsoever … , and all costs and expenses (including penalties and reasonable attorneys' and other professional fees and disbursements … ), whether or not resulting from third-party claims."

83.   By letter dated March 31, 2026, and at earlier times, the plaintiffs, among other things, demanded from the sellers indemnity and compensation for damages for Losses, but such demand was refused.

84.   The sellers, among other things, refused to discuss the plaintiffs' claims in good faith, much less agree on a resolution, and defendants otherwise breached their obligations.

85.   As discussed in Counts five through twenty-six below, defendants breached an array of obligations and have refused to indemnify the plaintiffs.

### COUNT ONE
### CONVERSION AGAINST ALL DEFENDANTS
### (Incorporating All Previous Allegations)

86.   The old operators, acting through the Jacobs, Masetti, and Metternich, have usurped trust property, as averred above, and each of the individual defendants thus is liable for conversion.

87.   The Old Propco and Doe Defendants are liable for conversion to the extent they received or participated in theft of trust property.

**WHEREFORE,** the New Operator Plaintiffs demand judgment against the defendants for compensatory damages of no less than $2,800,000, consequential, and punitive damages, pre-

14

and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

## COUNT TWO
## BREACH OF FIDUCIARY DUTY AGAINST INDIVIDUAL DEFENDANTS
### (Incorporating All Previous Allegations)

88.     The old operators agreed to hold Medicare, Medicaid, and other receivables payments in trust for the New Operator Plaintiffs, as averred above.

89.     By virtue of the trust agreement, the old operators owe fiduciary obligations to the New Operator Plaintiffs, including not to convert trust property.

90.     The old operators, acting through the Jacobs, Masetti, and Metternich, breached their fiduciary duties to the New Operator Plaintiffs.

91.     The individual defendants thus are liable for breach of fiduciary duty because they caused the old operators to usurp trust property.

**WHEREFORE,** the New Operator Plaintiffs demand judgment against the individual defendants for compensatory damages of no less than $2,800,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

## COUNT THREE
## PERMANENT MANDATORY INJUNCTION AGAINST ALL DEFENDANTS
### (Incorporating All Previous Allegations)

92.     A mandatory injunction directing delivery to the New Operator Plaintiffs of trust property now or in the future in a defendant's possession, custody or control (except property of an old operating company subject to the jurisdiction of the bankruptcy court and/or automatic stay) is necessary to avoid continuing conversion of trust property and irreparable harm, including destruction of the SNFs' business and operations.

15

93. The OTA's contain consent and agreement to the injunctive relief sought by plaintiffs.

94. The OTAs at pp.18-19 § 16(g) state:

> … Old Operator acknowledges that New Operator's right to consummate the transactions contemplated hereby are unique, and recognizes and affirms that that in the event of a breach of this Agreement, money damages will be inadequate and New Operator will have no adequate remedy at law. Accordingly, Old Operator agrees that New Operator shall be entitled, in addition to any other rights and remedies existing in its favor … at law or in equity, to enforce its rights and Old Operator's obligations hereunder not only by an action or proceeding for damages but also by an action or proceeding for specific performance, injunctive and/or other equitable relief (without posting of bond or other security).

95. As such, the parties set forth their understanding and acknowledgement that a grant of injunctive relief would be appropriate.

**WHEREFORE,** the New Operator Plaintiffs demand judgment of a mandatory permanent injunction directing the defendants to turn over all trust property to the New Operator Plaintiffs, whether such trust property is located in or outside of New Jersey (and except property held by an old operating company subject to the jurisdiction of the bankruptcy court and/or automatic stay), plus attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

## COUNT FOUR
### ACCOUNTING AGAINST ALL DEFENDANTS
### (Incorporating All Previous Allegations)

96. The status of the trust property is currently unknown to the plaintiffs.

97. An accounting is necessary to determine the status and location of the trust property.

98. The accounting, among other things, should set forth all transactions relating to the trust property, including without limitation the persons who received the trust property and

16

financial institution account(s) at which trust property now or previously has been held, and disposition of the trust property.

**WHEREFORE,** the New Operator Plaintiffs demand judgment directing the defendants to account for all trust property, plus attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT FIVE**
**FRAUD AGAINST ALL DEFENDANTS**
**(Incorporating All Previous Allegations)**

99.   The sellers' obligations set forth in this pleading have been breached from the outset of the parties' relationship.

100.   By way of example only, the obligation to hold receivables payments in trust and deliver them to the New Operator Plaintiffs has been violated since the closing of the APAs on or about March 31, 2025.

101.   The sellers represented prior to contract formation and prior to closing that they will perform their obligations when, in fact, the sellers never intended to perform those obligations, and have not performed them.

102.   The above representations were made by the individual defendants in their capacity as the natural persons through whom the sellers operate.

103.   After execution of the purchase agreements, the sellers engaged in the separate and independent fraud of repeatedly representing orally and in e-mails to the plaintiffs that trust property would be delivered to the new operators and that the sellers' other obligations will be performed.

17

104.  By way of example only, on February 27, 2026, the sellers' chief financial officer, defendant Andrew Masetti, stated, "You should have received [trust] funds yesterday and I am sending another $43K today.  I know this does not account for the total amount due."

105.  The sellers thus admitted that they were aware of the "total amount due."

106.  The total amount due, as of February 13, 2026, was approximately $1,800,000, and Mr. Masetti was aware of this sum because affiliates of the New Operator Plaintiffs had advised him of it in writing that day.

107.  Representing that additional trust funds would be delivered to the New Operator Plaintiffs while the sellers' actual intent was not to convey and to convert trust property, is fraud.

108.  Since the closing of the APAs, the above cycle of misrepresentations repeated itself on a continuing basis, consisting of defendants promising delivery of trust property but actually intending to usurp it, along with representing that they would perform their other obligations but not actually intending to do so.

109.  The material representations averred above were knowingly false when they were made.

110.  The misrepresentations were stated for the purpose of causing the plaintiffs to reasonably believe that (i) trust property would be delivered; (ii) the sellers would perform their obligations; and (iii) the sellers would transfer the SNFs to the plaintiffs.

111.  The plaintiffs reasonably relied on the misrepresentations.

112.  The plaintiffs were damaged by defendants misrepresentations.

**WHEREFORE,** the plaintiffs demand judgment against the defendants for compensatory damages of no less than $4,000,000, consequential, and punitive damages, pre-

18

and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

## COUNT SIX
### CIVIL CONSPIRACY AGAINST ALL DEFENDANTS
### (Incorporating All Previous Allegations)

113. The defendants conduct averred herein was part of a common plan to convert the new operators' receivables payments, along with engaging in other misconduct averred herein.

114. By way of example only, by failing to perform conditions precedent to license issuance and transfer of provider numbers to the new operators, the defendants were able to continue the conspiracy rather than enabling the plaintiffs to operate the SNFs on their own, and without receivables being paid into a seller's financial institution account.

115. Proceeds of the conspiracy were used by the defendants to satisfy their personal obligations and otherwise to enrich themselves.

116. The plaintiffs were damaged by the conspiracy through theft of trust property and other damages as averred herein.

**WHEREFORE,** the plaintiffs demand judgment against the defendants for compensatory damages of no less than $4,000,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

## COUNT SEVEN
### AIDING AND ABETTING AGAINST ALL DEFENDANTS
### (Incorporating All Previous Allegations)

117. Although the defendants are liable for conversion, breach of fiduciary duty, and fraud as averred above, in the alternative, to the extent the Court holds that the defendants are not directly liable for those torts, the defendants would liable for aiding and abetting the torts.

19

118.   The defendants had knowledge of the misconduct averred herein because they are affiliated with the old operators and, as to the individual defendants, operate the sellers.

119.   The defendants substantially assisted the torts of conversion, breach of fiduciary, and fraud because they caused the old operators to steal trust property and otherwise collaborated with the old operators, thereby aiding and abetting conversion and breach of fiduciary duty.

120.   Likewise, the defendants would be liable for aiding and abetting fraud because they caused fraudulent statements averred herein to be made and otherwise collaborated to effect the fraud.

**WHEREFORE,** in the alternative, the plaintiffs demand judgment against the defendants for compensatory damages of no less than $4,000,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT EIGHT**
**BREACH OF CONTRACT AGAINST OLD MERWICK PROPCO**
**AND OLD VENETIAN PROPCO**
**MEDICARE AND MEDICAID INELIGIBLE PATIENTS, INCLUDING FAILURE TO**
**DISCHARGE DELINQUENT RESIDENTS**
**(Incorporating All Previous Allegations)**

121.   Medicare and Medicaid are critical to an SNF because those programs often are the only source of payment for caregiving delivered by an SNF.

122.   In order for Medicare and Medicaid to cover an SNF's services, various approvals are needed on a patient-by-patient basis.

123.   A nurse employed by the State of New Jersey must determine that the patient's health merits an SNF stay, and the patient must otherwise complete a process known as pre-admission screening (collectively, "PAS").

20

124.     Upon obtaining a PAS, a patient's application for Medicare or Medicaid then must be approved by those programs.

125.     A decision by Medicare or Medicaid approving or denying a patient's application for SNF coverage is not immediate.

126.     Prior to admitting a prospective patient, it thus is common practice for an SNF to, among other things, evaluate whether Medicare or Medicaid approval is likely.

127.     Approval may be deemed retroactive to the date of a patient's application for Medicare or Medicaid, thereby resulting in full payment to an SNF for services delivered.

128.     However, other times approval is not retroactive, thereby resulting in a partial loss to an SNF.

129.     Because of the importance of Medicare or Medicaid approval, the sale agreements require a seller to indemnify the purchaser for already-admitted, pre-closing of sale patients who are later deemed by Medicare or Medicaid to be ineligible for coverage.

130.     The OTAs state at § 16(b)(vi):

INDEMNIFICATION.

\* \* \*

b.     Old Operator shall indemnify, save, protect, defend and hold harmless each of the New Operator Parties from and against all Losses arising from, out of, or relating to … (vi) any resident present at the Facility [*i.e.*, the Merwick or Venetian SNFs] on the Closing Date for whom a recognized payor source cannot be obtained following the Closing.

131.     The Old Propco Defendnats under the APAs are required to indemnify the purchasers for a breach of an OTA.

132.     In the event a patient admitted pre-closing is deemed ineligible for Medicare or Medicaid and remains at an SNF after closing, the Old Propco Defendants must bear the

21

financial losses associated with those pre-closing patients by indemnifying the New Operator

Plaintiffs for such post-closing losses.

133.     Moreover, the OTAs further provide at § 2(d) as to Medicare and Medicaid

ineligible patients:

> Resident Discharges for Nonpayment.  … prior to Closing, Old Operator
> shall use commercially reasonable best efforts to voluntarily discharge or
> transfer each resident of the Facility who has not timely paid his or her
> financial obligations to the applicable Facility and who owes the Facility in
> excess of twenty-five thousand dollars ($25,000.00) (each a "Delinquent
> Resident"). For the avoidance of doubt, the definition of Delinquent
> Resident shall not include residents who are awaiting approval of payment
> from a payor source.

134.     The sellers failed to use commercially reasonable best efforts to discharge

Delinquent Residents.

135.     By way of example only, post-closing the New Operator Plaintiffs discovered that

approximately 60-80 patients at the SNFs lacked Medicare or Medicaid approval.

136.     Because the Merick and Venetian SNFs have 200 and 180 beds, respectively,

approximately 20% of pre-closing patients lacked a payor source.

137.     Certain of the above non-paying patients not only are Medicare or Medicaid

ineligible, but the sellers had not even attempted to the start the process of obtaining Medicare or

Medicaid approval.

138.     Where the process of obtaining Medicare or Medicaid approval had been started,

the sellers often failed to comply with requests by those programs for additional documentation

or, as to Medicaid, to comply with patient asset criteria, which failure typically precludes

retroactive Medicaid coverage.

139.     Moreover, the sellers failed to perform the obligation to discharge or transfer

Delinquent Residents.

140.    The Old Propco Defendants have refused to indemnify plaintiffs for losses caused by Medicare and Medicaid ineligible patients.

**WHEREFORE,** the New Operator Plaintiffs demand judgment against the Old Propco Defendants for compensatory damages of no less than $1,030,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT NINE**
**BREACH OF CONTRACT AGAINST OLD MERWICK PROPCO**
**MEDICAID FRAUD AUDIT AND JUDGMENT**
**(Incorporating All Previous Allegations)**

141.    On July 15, 2025, pursuant to N.J.S.A. 30:4D-1 *et seq.*, the Clerk of the Superior Court entered judgment in favor of the Medicaid Fraud Division of the State of New Jersey against Old Merwick Opco, in the amount of $334,910.78.

142.    The above judgment pertains to a Medicaid fraud audit conducted by the State of New Jersey against Old Merwick Opco.

143.    The OTAs and APAs, among other things, obligated the sellers to deliver assets free of encumbrances.

144.    By way of example only, the APAs, at § 1(a), state, "

> … Seller hereby agrees to … convey … free and clear of all claims, liens, … [or] encumbrances … of any nature whatsoever (collectively, "Exceptions") … all of Seller's right, title and interest in and to all assets of Seller other than the Excluded Assets ....

145.    By way of further example only, the OTAs further state, among other things, at § 2(c)(vi) that the Old Operator Defendants shall not, "cause or permit any Exception (as defined in [an] APA) to exist on, any of the Purchased Assets ...."

23

146. Despite demand, the Old Merwick Propco has not paid the judgment or otherwise satisfied the debts to the State of New Jersey.

**WHEREFORE,** Merwick Propco and Opco demand judgment against Old Merwick Propco for compensatory damages of no less than $334,910.78, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT TEN**
**BREACH OF CONTRACT AGAINST OLD MERWICK PROPCO**
**AND OLD VENETIAN PROPCO**
**MEDICAID OVERPAYMENTS**
**(Incorporating All Previous Allegations)**

147. Medicaid has determined that it overpaid Old Merwick Opco and Old Venetian Opco for services rendered during those entities' pre-closing operations of the SNFs, in the amounts of (i) $334,910.78 and $236,202.15 for Merwick; and (ii) $608,790.31 for Venetian.

148. The APAs require Old Merwick Propco and Old Venetian Propco to indemnify the plaintiffs from all liabilities which relate to a seller's period of ownership, such as satisfying the above obligations.

149. Despite due demand, the Old Propco Defendants have breached their contractual obligations.

**WHEREFORE,** plaintiffs demand judgment against Old Merwick Propco and Old Venetian Propco for compensatory damages of no less than $571,112.93 and $608,790.31, respectively, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

## COUNT ELEVEN
## BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO
## FAÇADE REPAIRS
## (Incorporating All Previous Allegations)

150.   The Venetian SNF requires physical repairs because portions of its exterior stone façade are peeling off.

151.   The façade-related losses not only include the cost of repair, but numerous ensuing losses such as damage to the underlying plywood caused by exposure to rain and other moisture.

152.   Moreover, the stone façade's condition has caused residents and their families to view the Venetian SNF unfavorably, together with associated loss of reputation and revenue.

153.   The façade condition, and defendants' failure to repair it, breach the purchase agreements.

154.   Old Venetian Propco has admitted to the breaches and, among other things, represented that it would repair the façade post-closing.

155.   By way of example only, on April 11, 2025 Michael Jacobs stated:

> … I have decided as good deal partners to just strip down the stone and redo it all [*i.e.*, the entire façade].

156.   Later that day, Old Venetian Propco's construction contractor, copying Michael Jacobs, stated:

> Now that we are replacing the stone, all I need from the new ownership team is confirmation of the material you want used.  Once we have this selection, we will order the material and then schedule a kickoff meeting … to review sequencing and schedule … the entire veneer is being replaced.

157.   According to Old Venetian Propco, the façade repairs could be properly performed for $60,000 - $75,000.

158.   On December 5, 2025, Joshua Jacobs said:

> I discussed the matter [of façade replacement] with Michael [Jacobs]. He said the offer was made some time ago to have the stone work completed .... He said that based on the … completion estimates you shared … between $60-$75,000 … was reasonable ....

159. However, despite agreeing to perform the façade replacement, Old Venetian Propco failed to perform the façade work.

160. Plaintiffs believe that repair costs will be at least $200,000.

161. Old Venetian Propco breached its contractual obligation to repair the façade and thus is liable for money damages.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco for compensatory damages of no less than $200,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT TWELVE**
**BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO**
**LEGIONELLA COSTS**
**(Incorporating All Previous Allegations)**

162. Prior to closing, a Legionella matter arose at the Venetian SNF.

163. The sellers failed to disclose this material event.

164. Among other things, the material omission and concealment beached the Venetian SNF purchase agreements. *See, e.g.*, APA §§ 5(a)(v); 7(a), (h); 8(d), (e), (s), (w); OTA §§ 2(b)(ii), (xv); 18(j), (gg), (ii).

165. The Legionella matter has resulted in significant expense to Venetian Propco and Opco.

166. By way of example only, (i) filters on all sinks required replacement every 60 days, at an expense of approximately $25,000 - $30,000; (ii) hyperchlorination was required, at

26

approximately $600 per month; and (iii) shower and other faucets required filtration, testing was required and, among other things, water treatment systems required re-piping.

167. Legionella-related costs through the date of this pleading are anticipated to be at least $212,000, for which Old Venetian Propco is liable under the parties' agreements.

168. Despite due demand, Old Venetian Propco has breached its contractual obligations.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco for compensatory damages of no less than $212,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT THIRTEEN**
**BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO**
**TEMPORARY CERTIFICATE OF OCCUPANCY**
**(Incorporating All Previous Allegations)**

169. As of the date of this pleading, the Venetian SNF has been operated pursuant to a temporary certificate of occupancy for approximately 10 years.

170. Costs to obtain a permanent certificate of occupancy are anticipated to be at least $60,000.

171. In addition, the Venetian SNF has 11 open and outstanding permits from the sellers' period of ownership.

172. Among other things, the material omission and concealment beached the Venetian SNF purchase agreements. *See, e.g.*, APA §§ 5 (a)(viii); 5 (a)(x); 8(j), (p), (q); OTA §§ 18(j).

173. Old Venetian Propco is required to compensate Venetian Propco and Opco for the above losses.

174.    Despite due demand, Old Venetian Propco has breached its contractual obligations.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco for compensatory damages of no less than $60,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT FOURTEEN**
**BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO**
**CITY OF SOUTH AMBOY SEWER COSTS**
**(Incorporating All Previous Allegations)**

175.    In or about January 2026, the Venetian SNF learned that The City of South Amboy had previously imposed an approximately $40,000 fine because of sewer clog issues allegedly related to the Venetian SNF discharging bandages, plastics, greases and other improper waste in the municipal sewer system.

176.    Among other things, this undisclosed dispute between Old Venetian Propco and/or Old Venetian Opco and the City violates APA §§ 1(a); 5(a)(iv)-(v), (x); 8(d), (o), (p), (q), (s); and violates OTA §§ 2(b)(vii); 3(a)(viii); 15; 18(d).

177.    Old Venetian Propco is required to indemnify Venetian Propco and Opco for the above losses.

178.    Despite due demand, Old Venetian Propco has breached its contractual obligations.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco for compensatory damages of no less than $40,000, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

28

## COUNT FIFTEEN
### BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO
### AND OLD MERWICK PROPCO
### GRAS LAWN LLC MECHANIC'S LIEN AND DEBTS
### (Incorporating All Previous Allegations)

179. A mechanic's lien exists upon the Venetian SNF's real property, recorded on June 6, 2025, in the principal amount of approximately $4,051.75.

180. The lienor, Gras Lawn LLC, a landscaping and snow removal company, performed snow removal work pursuant to a contract dated November 1, 2024.

181. Snow removal was performed not only at the Venetian SNF, but also the Merwick SNF.

182. Gras Lawn LLC has asserted that $5,864.38 is owed for snow removal at the Merwick SNF.

183. Gras Lawn LLC performed any snow removal work prior to March 31, 2025.

184. The sellers failed to pay Gras Lawn LLC.

185. Gras Lawn has sought payment for the above debts from the plaintiffs.

186. Despite due demand, Old Venetian Propco and Old Merwick Propco have breached their contractual obligations as to Gras Lawn LLC's mechanic's lien and payment demands.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco, and Merwick Propco and Opco demand judgment against Old Merwick Propco, for compensatory damages of no less than $4,051.75 and $5,864.38, respectively, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

29

**COUNT SIXTEEN**
**BREACH OF CONTRACT AGAINST OLD MERWICK PROPCO**
**FIRE MARSHAL DEBT**
**(Incorporating All Previous Allegations)**

187.    On March 2, 2026, William L. Gorka of the Plainsboro Fire Marshal's office advised the Merwick SNF that there is "a balance of $21,899.00 owed to the state" for fire-related matters.

188.    Among other things, outstanding Fire Marshal obligations violate APA §§ 1(a); 5(a)(x); 8(o), (s); and violate OTA §§ 2(b)(vii); 8(a); 15; 18(d), (j), (y).

189.    The outstanding fire marshal obligations have prevented capital expenditures at the Merwick SNF, as the Plainsboro Township has withheld a building permit because of the outstanding debt.

190.    Despite due demand, Old Merwick Propco has breached its contractual obligations, resulting in damages to the Merwick plaintiffs.

**WHEREFORE,** Merwick Propco and Opco demand judgment against Old Merwick Propco for compensatory damages of no less than $21,899.00, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT SEVENTEEN**
**BREACH OF CONTRACT AGAINST OLD MERWICK PROPCO**
**DAVITA, INC. RENT**
**(Incorporating All Previous Allegations)**

191.    Davita, Inc., a dialysis company, has rented a portion of the Merwick SNF for dialysis work.

192.    Davita, Inc., however, had received an IRS Notice of Levy because of unsatisfied tax obligations and liens related to the sellers' period of ownership.

30

193.    As such, Davita had paid rent for April 2025 to the IRS and not to Merwick Propco or Merwick Opco, in the amount of $9,188.33.

194.    The outstanding tax obligations and liens violate, among other things, APA §§ 1(a); 5(a)(i), (iv)-(v), (x); 7(h); 8(c), (h); (o), (p), (q), (s); and violate OTA §§ 2(b)(vii); (c)(vi); 3(a)(viii); 8(a); 15; 18(y).

195.    Despite due demand, Old Merwick Propco has breached its contractual obligations, resulting in damages to the Merwick plaintiffs.

**WHEREFORE,** Merwick Propco and Opco demand judgment against Old Merwick Propco for compensatory damages of no less than $9,188.33, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

## COUNT EIGHTEEN
### BREACH OF CONTRACT AGAINST OLD MERWICK PROPCO
### SOLAR PANELS
### (Incorporating All Previous Allegations)

196.    The sellers during their period of ownership of the Merwick SNF contracted for the installation of solar panels at that facility.

197.    Neither New Merwick Propco nor Opco assumed the solar panel contract.

198.    The Merwick sellers failed to properly terminate the above contract, and the solar panel vendor has threatened to sue New Merwick Propco and/or Opco for breach of contract.

199.    Among other things, solar panel claims violate APA §§ 1(a); 8(s); and violate OTA §§ 8(a); 2(b)(vii), (xiii).

200.    Despite due demand, Old Merwick Propco has breached its contractual obligations, resulting in damages to the Merwick plaintiffs.

31

**WHEREFORE,** Merwick Propco and Opco demand judgment against Old Merwick Propco for compensatory damages in an amount to be determined at trial, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

### COUNT NINETEEN
### BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO
### AND OLD MERWICK PROPCO
### FEDERAL TAXES AND CIVIL MONETARY PENALTIES
### (Incorporating All Previous Allegations)

201. Defendants are subject to outstanding federal tax debts, liens, and civil monetary penalties.

202. The above obligations have resulted in a lien upon the SNFs' real property.

203. The Internal Revenue Service typically will not disclose to a third party, such as the plaintiffs, details about other persons' tax information.

204. However, as of the date of this pleading, plaintiffs are aware of the following tax obligations and civil monetary penalties.

205. Old Merwick Opco has incurred IRS 941-related tax obligations, for the period ending June 2020, in the unpaid principal amount of $61,050.27, and with an approximate total balance of $83,677.33.

206. Old Merwick Opco also is subject to other outstanding tax obligations in the unpaid principal amounts of $29,877.44 and $11,848.89, which have resulted in the Department of Health and Human Services garnishing funds due to Merwick Opco, including per IRS notices dated February 8 and 9, 2026.

207. Old Venetian Propco and/or Old Venetian Opco has incurred outstanding civil monetary penalties in the amounts of approximately $123,000 and $34,000.

32

208.   One or more of the sellers also are subject to at least two additional outstanding civil monetary penalties in the amounts of approximately $96,000 and $59,475, along with tax obligations and liens.

209.   It is defendants' obligation to identify and satisfy tax obligations and civil monetary penalties, and remove liens upon the Merwick and Venetian SNFs.

210.   Tax obligations and liens, and civil monetary penalties, among other things, violate APA §§ 1(a); 5(a)(i), (iv)-(v), (x); 7(h); 8(c), (h); (o), (p), (q), (s); and violate OTA §§ 2(b)(vii), (xii); (c)(vi); 3(a)(v), (viii); 6(g); 8(a); 15; 18(y).

211.   Despite due demand, Old Merwick Propco, and Old Venetian Propco, have breached their contractual obligations as to tax- and civil monetary penalty-related Losses, resulting in damages to the plaintiffs.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco, and Merwick Propco and Opco demand judgment against Old Merwick Propco, for compensatory damages in amounts to be determined at trial, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT TWENTY**
**BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO**
**AND OLD MERWICK PROPCO**
**ERISA AND FLSA LITIGATIONS**
**(Incorporating All Previous Allegations)**

212.   Merwick Opco is a defendant in the action captioned *Latka v. Merwick Care & Rehabilitation Center, LLC, et al.*, Case No. 25-cv-14150, in the United States District Court for the District of New Jersey (the "Latka Action").

213.   Old Merwick Opco, and related entities, also are defendants in the Latka Action.

33

214.  The Latka Action plaintiff averred claims under the Employee Retirement Income Security Act of 1974, Fair Labor Standards Act, and related state laws, pertaining to, among other things, the Old Merwick Defendants' ownership of the Merwick SNF.

215.  The Latka Action's averments include failure to remit health insurance premiums that were deducted from employees' wages to the plan's administrator, and failure to pay overtime.

216.  The United States Department of Labor has similarly commenced an action against entities related to the defendants, in the action captioned *Chavez-Deremer v. Windsor Healthcare Management, LLC, et al.*, Case No. 25-cv-03773, in the United States District Court for the District of New Jersey (the "DOL Action").

217.  Upon information and belief, defendants have retained counsel in the Latka Action to represent Merwick Opco, jointly with representing the other defendants.

218.  Upon information and belief, the defendants, without Merwick Opco's knowledge, entered into a written settlement agreement in the Latka Action requiring the payment of money to the plaintiff.

219.  Losses, as defined by APA § 11(a) and OTA § 16(a), include "all costs and expenses (including … reasonable attorneys' and other professional fees and disbursements incurred in the investigation or defense of any … claims, or in asserting, pursuing or enforcing any … claims)."

220.  The Latka Action and DOL Action have resulted in Losses to plaintiffs consisting of professional fees to evaluate the above actions, as well as other Losses.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco, and Merwick Propco and Opco demand judgment against Old Merwick Propco, for

34

compensatory damages in amounts to be determined at trial, consequential, and punitive

damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such

other and further relief as may be just and proper.

## COUNT TWENTY-ONE
## BREACON OF CONTRACT AND OF IMPLIED COVENANCE OF GOOD FAITH AND FAIR DEALING AGAINST OLD VENETIAN PROPCO AND OLD MERWICK PROPCO FAILURE TO COOPERATE AS TO LICENSE ISSUANCE AND PROVIDER NUMBER TRANSFERS
### (Incorporating All Previous Allegations)

221.    As averred above, the defendants have converted the New Operator Plaintiffs'

post-closing accounts receivable.

222.    The opportunity for continued conversion exists because, until issuance of

licenses, and transfer of Medicare and Medicaid provider numbers to the New Operator

Plaintiffs, payments by Medicare, Medicaid, and others for the New Operator Plaintiffs' accounts

receivable will continue to be deposited into a financial institution account in the name of a

seller.

223.    The Department of Health of the State of New Jersey has not approved the

issuance of a new license to the New Operator Plaintiffs, as of the date of this pleading.

224.    Additionally, the old operators' Medicare and Medicaid provider numbers have

not been transferred to the New Operator Plaintiffs, as of the date of this pleading.

225.    As such, the New Operator Plaintiffs are operating pursuant to the subleases and

administrative services agreements with the old operators.

226.    Among other things, there presently exists the above referenced civil monetary

penalties, plus one or more overpayments by Medicare and/or Medicaid to the old operators.

227.    There also are the existing tax liens and other obligations averred above from the

defendants' period of ownership.

228.    Despite due demand, the Old Propco Defendants have failed to cooperate fully to resolve all outstanding matters, which has negatively affected and impaired issuance of a new license, and transfer of provider numbers to, the New Operator Plaintiffs.

229.    The plaintiffs have no adequate remedy at law for the defendants' failure to cooperate and otherwise perform contractual obligations.

230.    As such, the New Operator Plaintiffs demand specific performance of the duty to cooperate to effect new license issuance and transfer of provider numbers.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco, and Merwick Propco and Opco demand judgment against Old Merwick Propco, directing the specific performance of the duty to cooperate and otherwise perform acts required of the Old Propco Defendants before a license will be issued, and provider numbers transferred to, the New Operator Plaintiffs, or alternatively money damages, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT TWENTY-TWO**
**BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO**
**AND OLD MERWICK PROPCO**
**IRS GARNISHMENTS**
**(Incorporating All Previous Allegations)**

231.    The Internal Revenue Service has garnished trust property consisting of receivables payments to satisfy the entity defendants' tax obligations pertaining to their period of ownership of the SNFs.

232.    The defendants have not disclosed the reason(s) for the garnishments notwithstanding their obligations to the plaintiffs and that the garnished receivables are the plaintiffs' property.

233.    The plaintiffs believe that the IRS garnishments may be related to, among other things, the defendants' tax obligations as to employee retention credits and deferred payroll taxes.

234.    Because the garnishments pertain to defendants' period of ownership of the SNFs, they must be paid by defendants and were wrongfully paid from plaintiffs' property.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco, and Merwick Propco and Opco demand judgment against Old Merwick Propco, for compensatory damages in amounts to be determined at trial, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

**COUNT TWENTY-THREE**
**BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO**
**AND OLD MERWICK PROPCO**
**FAILURE TO SATISFY OLD OPERATOR DEBTS AT CLOSING**
**(Incorporating All Previous Allegations)**

235.    As averred above, the sellers contracted to convey unencumbered assets to the purchasers.

236.    Numerous debts and other encumbrances upon the SNFs were satisfied by the sellers at closing from sale proceeds.

237.    However, the parties' agreements require that all debts of the sellers be satisfied at or before closing as part of conveying unencumbered assets to the plaintiffs.

238.    Despite due demand, the Old Propco Defendants breached their contractual obligations by failing to satisfy all of the old operators' debts at closing and otherwise cause the sellers to convey unencumbered assets to the purchasers.

**WHEREFORE,** Venetian Propco and Opco demand judgment against Old Venetian Propco, and Merwick Propco and Opco demand judgment against Old Merwick Propco, for compensatory damages in amounts to be determined at trial, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper

## COUNT TWENTY-FOUR
### BREACH OF CONTRACT AGAINST OLD VENETIAN PROPCO AND OLD MERWICK PROPCO
### RECOVERY OF FEES AND EXPENSES
### (Incorporating All Previous Allegations)

239.    The APAs state at § 16(g), "In any dispute between the Parties that results in arbitration or litigation, the prevailing party shall be reimbursed for all reasonable costs, including, but not limited to, attorneys' fees."

240.    The OTAs state at § 26, "In the event any dispute between the parties hereto that results in arbitration or litigation (including any enforcement action of an arbitration award or any action to compel arbitration or change venue), the prevailing party shall be reimbursed for all reasonable costs, including, but not limited to, reasonable attorneys' fees."

241.    Moreover, Losses, as defined by APA § 11(a) and OTA § 16(a), include "all costs and expenses (including … reasonable attorneys' and other professional fees and disbursements incurred in the investigation or defense of any … claims, or in asserting, pursuing or enforcing any … claims)."

242.    As such, the plaintiffs are entitled to recover, among other things, their reasonable attorneys' fees and disbursements incurred in investigating, asserting, pursuing, and enforcing the claims averred in this action.

**WHEREFORE,** plaintiffs demand judgment against Old Merwick Propco and Old Venetian Propco for compensatory damages consisting of reasonable attorneys' and other professional fees and disbursements, in amounts to be determined at trial, consequential, and punitive damages, pre- and post-judgment interest, costs and fees, and such other and further relief as may be just and proper.

## COUNT TWENTY-FIVE
## BREACH OF CONTRACT AGAINST HYMAN JACOBS
## GUARANTIES
## (Incorporating All Previous Allegations)

243.    Hyman Jacobs executed and delivered to plaintiffs his personal absolute and unconditional guaranties of the sellers' obligations due and owing to the plaintiffs under the APAs and OTAs.

244.    The Guaranties have not been terminated and remain fully enforceable.

245.    The guaranties each state at pp. 1-2:

WHEREAS, as a result of Guarantor's [*i.e.*, Hyman Jacobs's] ownership interests in Seller and Old Operator, Guarantor will benefit from the transactions contemplated under the APA, OTA, [and other agreements] (the "Agreements") …

\* \* \*

1.    Guarantor does hereby absolutely, irrevocably, and unconditionally guarantee, upon the terms and conditions hereof, the full, prompt and complete payment of the indemnification and other payment obligations (the "Indemnities") of Seller and Old Operator owed to the Guaranteed Parties [*i.e.*, the plaintiffs] pursuant to the Agreements, but only for so long, and subject to such applicable limitations (including, as applicable, the Cap and Basket (each as defined in the APA)) as the foregoing Indemnities shall survive the Closing (the "Indemnity Survival Period"), as provided in the applicable Agreements (the foregoing, collectively and as so limited, the "Guaranteed Obligations") ....   Notwithstanding any provisions of this Guaranty Agreement, the APA and/or the OTA, Guarantor's liability under this Guaranty Agreement shall not, under any circumstance, exceed One Million Eight Hundred Forty Four Thousand Three Hundred Eleven and $^{38}/_{100}$ Dollars ($1,844,311.38) (the "Guaranty Cap").

2.      This Guaranty Agreement is an absolute, unconditional, complete and continuing one, and may be proceeded upon by the Guaranteed Parties against Guarantor before taking any other actions, and no notice of Seller's or Old Operators' liability for the Indemnities need be given to Guarantor.

246.    By reason of the foregoing, plaintiffs are entitled to judgment against Hyman Jacobs for breach of his guaranties to pay all of the Indemnities, as defined in the guaranties.

**WHEREFORE,** the plaintiffs demand judgment against Hyman Jacobs for compensatory damages in amounts to be determined at trial, consequential, and punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, costs and fees, and such other and further relief as may be just and proper.

### COUNT TWENTY-SIX
### BREACH OF CONTRACT AGAINST HYMAN JACOBS
### RECOVERY OF FEES AND EXPENSES
### (Incorporating All Previous Allegations)

247.    The guaranties each state at § 4:

The prevailing party shall be reimbursed by the other party for its reasonable legal fees, costs and expenses incurred in connection with any action, dispute or proceeding arising from or relating to this Guaranty Agreement.

248.    As such, the plaintiffs are entitled to recover all of their reasonable legal fees, costs and expenses arising out of or related to the guaranties.

**WHEREFORE,** the plaintiffs demand judgment against Hyman Jacobs for attorneys' fees, costs and expenses in an amount to be determined by the Court, costs and fees, and such other and further relief as may be just and proper.

*[signature page follows]*

Dated: New York, New York
   May 13, 2026

**JONATHAN M. PROMAN, ESQ.**

By: _s/ Jonathan M. Proman_
   Jonathan M. Proman

30 Wall Street, Eighth Floor
New York, New York 10005
(917) 524-7566
jproman@promanlaw.com

_Attorneys for Plaintiffs_
_Merwick Healthcare and Rehab Center LLC,_
_Venetian Healthcare and Rehab Center LLC,_
_Merwick Propco Urban Renewal LLC,_
_and Venetian Propco LLC_

**VERIFICATION**

I, Yitzchok Rokowsky, of full age, hereby certify as follows:

1.      I am Managing Director of each of the plaintiffs.

2.      I have reviewed the allegations contained in this verified complaint and state that they are true to the best of my personal knowledge, except for those matters alleged upon information and belief, and as to those matters, I believe them to be true.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 13, 2026

_____
   **Yitzchok Rokowsky**

## DESIGNATION OF TRIAL COUNSEL

In accordance with *R*. 4:25-4, the Plaintiffs hereby designate Jonathan M. Proman as trial counsel in this action.

Dated: New York, New York
May 13, 2026

**JONATHAN M. PROMAN, ESQ.**

By: *s/ Jonathan M. Proman*
Jonathan M. Proman

30 Wall Street, Eighth Floor
New York, New York 10005
(917) 524-7566
jproman@promanlaw.com

*Attorneys for Plaintiffs*
*Merwick Healthcare and Rehab Center LLC,*
*Venetian Healthcare and Rehab Center LLC,*
*Merwick Propco Urban Renewal LLC,*
*and Venetian Propco LLC*

## RULE 4:5-1 CERTIFICATION

Pursuant to *R*. 4:5-1(b)(2), the undersigned attorney for the plaintiffs hereby certifies that to the best of my knowledge, information, and belief, this matter is not currently the subject of any other Court or arbitration proceeding and none is contemplated at this time, except that, on April 23, 2026, entities related to the defendants, Merwick Care & Rehabilitation Center, LLC and The Venetian Care and Rehabilitation Center, LLC, filed voluntary petitions for bankruptcy protection and plaintiffs have asserted, or will assert, claims against those entities and/or other persons as part of bankruptcy proceedings, and the plaintiffs may learn of additional claims and parties as this action and/or bankruptcy proceedings progress. Plaintiffs, to the best of their knowledge, information, and belief, presently know of no other parties who should be joined in

this action at this time, although additional persons may be disclosed following commencement of this action, and the names of Doe Defendants may be disclosed as well.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: New York, New York
      May 13, 2026

**JONATHAN M. PROMAN, ESQ.**

By: *s/ Jonathan M. Proman*
     Jonathan M. Proman

30 Wall Street, Eighth Floor
New York, New York 10005
(917) 524-7566
jproman@promanlaw.com

*Attorneys for Plaintiffs*
*Merwick Healthcare and Rehab Center LLC,*
*Venetian Healthcare and Rehab Center LLC,*
*Merwick Propco Urban Renewal LLC,*
*and Venetian Propco LLC*

## RULE 1:38-7(b) CERTIFICATION

I certify that confidential personal identifiers have been redacted from the documents now submitted to the Court and will be redacted from all documents submitted to the Court in the future in accordance with Rule 1:38-7(b).

[*signature block follows*]

43

Dated: New York, New York
      May 13, 2026

**JONATHAN M. PROMAN, ESQ.**

By: *s/ Jonathan M. Proman*
     Jonathan M. Proman

30 Wall Street, Eighth Floor
New York, New York 10005
(917) 524-7566
jproman@promanlaw.com

*Attorneys for Plaintiffs*
*Merwick Healthcare and Rehab Center LLC,*
*Venetian Healthcare and Rehab Center LLC,*
*Merwick Propco Urban Renewal LLC,*
*and Venetian Propco LLC*